## Trustees of the Proprietors of Kingston *v.* Lehigh Valley Coal Company, Appellant.

*Equity—Equity practice—Exceptions—Appeals.*

1. Where a bill in equity involves the construction of a lease and the findings of fact and conclusions of law of the trial judge relating to the construction of the lease are not controverted by exceptions, the correctness of the construction of the lease by the lower court cannot be passed upon by the appellate court.

*Lease—Agricultural lease—Waste—Mining of coal.*

2. It seems that a lease made in 1821, the operative words being "demise, set and to farm let," is a lease of the surface only, and if the lessee mines coal on the premises he commits waste.

3. Where a lessee who is in possession of premises under a lease for agricultural purposes only mines coal and thereby makes passageways, he cannot use such passageways for the purpose of

mining coal from other lands. To permit him to do so would be inequitable in that it would be allowing him to profit by his own wrong.

Argued April 10, 1912. Appeal, No. 128, Jan. T., 1912, by defendant from decree of C. P. Luzerue Co., Oct. T., 1910, No. 8, on bill in equity for an injunction in case of Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Company. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.
The opinion of the Supreme Court states the case.

*Error assigned* was the decree of the court.

*F. W. Wheaton,* with him *P. F. O'Neill* and *J. B. Woodward,* for appellant.—By the common law of England a tenant for life or years was not liable to an action for waste, unless he was restrained by particular words in his lease from committing waste, because it was in the power of the person who created the estate to impose such terms on the tenant as he thought proper, and if he did not, it was his own loss: 2 Coke's Inst. 145; 4 Coke's Inst. 299; 2 Blackstone's Com. 282, 283; Coke on Littleton 54; Cruise's Digest of Real Propriety 5, 35, 68; 3 Thomas' Coke (2d Am. Ed.), 191 Note M; Green v. Cole, 2 Wm. S. Saunders, 252 Note; 1 Washburn on Real Property (6th Ed.), 129, Sec. 270; Mitchell on Real Estate and Conveyancing, 126; Moore v. Ellsworth, 3 Conn. 483; Neel v. Neel, 19 Pa. 323.

Tenants in dower and by the counrtesy were answerable for waste at common law, but tenants for life or years were first made liable for waste by the statute of Marlborough (Marlbridge), 52 Henry III, Cap. 23, Sec. 2: 2 Blackstone's Commentaries, 224; Neel v. Neel, 19 Pa. 323.

The statute of Marlborough was never in force in Pennsylvania: Report of the Judges, 3 Binn. 595; Rob-

erts' Digest of British Statutes (2d Ed.) 8; Mitchell on Real Estate and Conveyancing, 126; Neel v. Neel, 19 Pa. 323.

The apparent reason is, that the statute was not suitable to this country, and the principle of the enactment was illy adapted to the conditions of a wild, unsettled territory where clearing the land to make room for actual occupation was of paramount importance and necessity, and people had to waste that they might live.

The usual operative words of a lease are "demise, grant and to farm let": Krider v. Lafferty, 1 Wharton (Pa.) 303.

"Set" means "set over," and is equivalent to the word "lease": Standard Dictionary; Greenaway v. Adams, 12 Vesey, Jun., 395; Lynde v. Hough, 27 Barbour (N. Y.) 415; Auman v. Auman, 21 Pa. 343.

The decree is erroneous in enjoining haulage through the demised premises: MacSwinney on Mines, 32.

*J. E. Jenkins,* with him *A. L. Turner* and *W. H. Goodwin,* for appellee.—The first branch of appellant's argument upon the construction of the John Bennett lease, raises at the bar of the appellate court a question not "finally passed upon by the court" below, because waived by the appellant in the exceptions there filed: Beatty v. Harris, 205 Pa. 377; Swope v. Snyder, 209 Pa. 352; Benjamin v. Zell, 100 Pa. 33; Welch v. Miller, 210 Pa. 204; Carpenter v. Lancaster, 212 Pa. 581; Turner v. Whitaker, 9 Pa. Superior Ct. 83; Moore v. Adams, 29 Pa. Superior Ct. 239.

It has never been held that the statute of Marlbridge is not in force in Pennsylvania.

It is not included in the report of the judges. It is, however, cited as in force by Jackson & Gross, in their work on Landlord & Tenant, Sec. 101.

The report of the judges is not conclusive.

The question whether a statute is in force in Pennsylvania depends not alone on the report of the judges, as

we find it in Roberts' Digest of British Statutes: Warren v. Steer, 118 Pa. 529.

British statutes passed prior to the date of colonization abrogating or amending the common law should be considered as accompanying the common law itself, and forming an integral part of it: Lyle v. Richards, 9 S. & R. 322; Guardians of the Poor v. Greene, 5 Binn. 554.

No Pennsylvania statute defines waste or expressly prohibits its commission.

Waste in Pennsylvania by tenant for years must be a wrong against his landlord upon common law principles; or by the operation of the statute of Marlbridge; or by the necessarily implied prohibition of Gloucester; or by 13th Edw. 1; or else tenant for years is not now impeachable of waste.

But by dicta and adjudications in a great number of cases it has been assumed or held that tenants for life and years are and from the earliest times have been impeachable of waste in Pennsylvania, unless exempt by express words or necessary implication; and that the thing severed becomes the property of the landlord: Shultz v. Barker, 12 S. & R. 272; Tammany v. Whitaker, 4 Watts 221.

No exemption from waste is expressed in the lease of 1821: Earle v. Arbogast, 180 Pa. 409; Smith v. Chappel, 25 Pa. Superior Ct. 81; MacSwinney on Mines, 52; Saunders's Case, 5 Co. 12a.

For sixty years the parties construed the contract as a lease for farming purposes: Weld v. Hornby, 7 East. 195; Griffin v. Fellows, 81* Pa. 114; Broom's Legal Maxims, 682.

The continued use by defendant of the tunnels underlying plaintiff's land is an injury to the reversion, and enjoinable: Wolf v. Christman, 202 Pa. 475; Laning v. Darling, 209 Pa. 254; Walters v. McElroy, 151 Pa. 549; Bussier v. Weekley, 11 Pa. Superior Ct. 463.

OPINION BY MR. JUSTICE MESTREZAT, May 6, 1912:

The questions involved in this appeal, as stated by the defendant, the appellant here, are (a) whether the lease made to Bennett in 1821, the operative words being "demise, set and to farm let," was a lease of the surface only, to be used for agricultural purposes merely, or a lease of the entire solum without impeachment of waste, and (b) whether the plaintiff can restrain the use of the underground passageways, made by appellant in mining the coal, for the removal of coal from other lands, the tenant in possession not objecting and no harm being done to the reversion by such use.

The learned trial judge filed an exhaustive opinion and answered the numerous points of the parties which raised all the questions of fact and law in the case. Certain exceptions were filed by the defendant which were overruled by the court in banc, and an injunction was granted as prayed for in the bill. In disposing of the exceptions, the learned court said, inter alia: "As a result of the trial on the merits, the trial judge found against the defendant on every point in the controversy. The defendant has filed exceptions which do not controvert the correctness of the court's finding that (1) the plaintiff's title to the coal underlying this land is good and the defendant has no title; and (2) the mining of the coal by the defendant was unlawful and a trespass. Having accepted defeat on the main controversy, the defendant's exceptions now raise only two incidental questions: (1) The bill should be dismissed because the persons claiming to hold the offices of trustees for the proprietors are not entitled to that office, and therefore had no authority to cause this bill to be filed. (2) The court erred in continuing the injunction to restrain the use of the underground passages."

The legal effect of the Bennett lease was determined by the trial judge in his opinion and answers to the several points. He held that the lease was for agricultural purposes only, and conferred no authority on the lessee

to mine and remove coal from the premises or to use the passageways resulting from the removal of the coal. The findings of fact and law from which the judge drew his conclusion as to the interpretation of the lease were not, as suggested by the court below, excepted to and passed upon by the court in banc. Hence, they cannot be considered here, and that eliminates the first question suggested by the appellant company as one of the questions raised and argued by it. Rule 67 of the equity rules provides: "Upon appeal to the Supreme or Superior Court such matters only as have been so excepted to and finally passed upon by the court shall be assignable for error." Speaking of the rules of equity practice and their enforcement, the present Chief Justice, delivering the opinion in Beatty v. Harris, 205 Pa. 377, says, inter alia: "They (the rules) expressly direct that the exceptions filed shall cover all objections to rulings on evidence, findings of fact or law, and to the decree of the court; the power is given the judge or the court in banc to sustain or dismiss exceptions, and to confirm, modify or change the decree entered......The object of these rules is to afford an opportunity for a careful review of the rulings made at the trial and of the findings of the court. The rules are mandatory, and their violation cannot be overlooked." This language was substantially repeated in the very recent case of Page v. Lytle, 229 Pa. 198.

In the court below, the appellant company tried the case on the theory that the Bennett lease was a conveyance in fee of the premises. It asked the court to find as a matter of law that "the intention of the parties was to pass the whole estate, mineral and surface," which was refused, but the answer of the court is not excepted to nor assigned for error. On the other hand, the trial judge found as a matter of law, in answer to plaintiff's request, that the mining of the coal by the defendant with the consent of the plaintiff's tenant and payment of royalties therefor to the tenant constituted a waste

of plaintiff's reversion by the tenant, a trespass in the nature of waste by the defendant, and a fraud upon the plaintiff. This finding was not excepted to nor assigned for error here. In the present condition of the record, we are at a loss to see how we can consider or determine whether the Bennett lease is a lease without impeachment of waste.

It may, however, be suggested in passing that in a lease for a term of years, where not otherwise provided in the instrument, we have no doubt the tenant was in 1821, as he is now, impeachable for waste. The several remedial statutes on the subject, enacted since 1821, do not define waste nor confer any rights, but simply provide a remedy for what is recognized as a wrongful act and a violation of existing rights. The statutes of Marlborough and Gloucester seem to have been regarded in the same light. Lord Coke says: "Neither this act (Gloucester) nor the statute of Marlbridge doth create new kind of wastes, but do give new remedies for old wastes; and what is waste, and what not, must be determined by the common law": 2 Inst. 300-1. That waste by a tenant for life or years was an actionable injury to the remainderman or reversioner has been assumed in numerous cases in this court and the lower courts, beginning with the earliest reported decisions. We have held that the statutes allowing the writ of estrepement are simply declaratory of the common law authority of the courts, and that they were passed because the courts did not exercise their authority by injunction to prevent waste as freely as they should have done: Byrne v. Boyle, 37 Pa. 260, 262. Griffin v. Fellows, 81* Pa. 114, was an action of ejectment brought by one claiming under the trustees of Providence, another of the seventeen certified townships of Luzerne county. The defendant claimed under the original lessee whose lease, dated in 1796, was very similar to the one under which the defendant here claims, but in the habendum clause contained the additional words: "with every privilege

of mines and minerals of whatever description." The trial court there held that the defendant was not impeachable for waste in opening and working coal and stone mines on the distinct ground that the estate of the lessee was enlarged by the words above quoted, used in the habendum which, in a deed, determines what estate is granted. In discussing the question involved in the case, the learned trial court in an elaborate opinion, adopted by this court, said inter alia (p. 122) : "It is an important fact in the case that there were no open mines or quarries on the premises at the date of the lease; that mining of coal was first commenced by the tenant in 1810, and quarrying stone in 1855 or 1856. These acts were to the prejudice of the reversioner, and were undoubtedly waste, operating as a forfeiture of the term and entitling the lessor to recover the premises by ejectment, unless they were authorized by the lease, or the forfeiture was by some act of his......In a lease designed merely for agricultural purposes there is no occasion to say anything in regard to the mines or minerals, where there are no open mines, unless it is intended to grant some interest therein. When they *are* mentioned it must be considered that there was a *purpose* in doing so." The court further held that its interpretation of the lease was sustained by the fact that the lessee had for more than half a century operated the mines with the knowledge of the lessors, who had regularly received the stipulated rent. In the case at bar the operative words in the lease are simply "demise, set and to farm let," without any words in any part of the lease referring to the minerals, which were never opened on the premises. For sixty years immediately subsequent to the letting the parties had treated the lease as one for agricultural purposes only.

The other and only question properly determinable here, the right of the appellant to use the passageways through the coal, requires but brief consideration. We are not impressed with the argument of the appellant

company that it should be permitted to continue its trespasses on the plaintiff's premises by using the passageways because "the public is in urgent need of all the coal that can be mined at the present time." The issue here is not between "the public" and the plaintiff, but between the latter and the appellant company which, as determined by the court, was not the owner of the coal and was a trespasser in mining and removing it. It is true that the tenant or the appellant company holding under him was in possession of the land under the lease for agricultural purposes, but only for such purposes. The company did not own the coal and was not authorized by the lease to remove it. In mining the coal, therefore, it was a trespasser; and in using the passageways made by its own wrongful act, it is simply continuing its trespasses against the reversion, which a court of equity, regardless of there being a remedy at law, will always enjoin: Walters v. McElroy, 151 Pa. 549. As said by the learned trial judge, to permit the appellant company to continue the use of the passageways would be inequitable in that it would be allowing it to profit by its own wrong.

The decree is affirmed.