# Trustees of the Proprietors of Kingston *v.* Lehigh Valley Coal Company, Appellant (No. 1).

*Waste—Damages—Recovery by reversioner—Statute of limitations—Trustees—Trustees for charitable use—Measure of damages—Value of coal mined—Ascertainment of value—Title to land—Question for jury.*

1. Damages for coal unlawfully mined and converted for many years by the assigns of a tenant for 999 years, can be recovered by the reversioner, notwithstanding that he will not be entitled to possession for many centuries, but the recovery may be only as to coal so mined and converted within six years before the bringing of the action, unless it appear that the injury was not discovered until within six years before the bringing of the action, and that it

could not, in the exercise of reasonable vigilance, have been discovered earlier.

2. The fact that such reversioner is a trustee will not toll the statute as to injuries occurring more than six years before the beginning of the action, where the controversy is between cestuis que trustent and trustees on one side, and strangers on the other, nor will the fact that the trustee holds for a charitable use prevent the running of the statute as the statute makes no exception in such cases.

3. Damages for such a trespass should be measured by the acreage value of the coal in a solid body, except in those cases where the coal, by reason of its location, has a per ton value for operating purposes, when recovery on such basis may be allowed.

4. Where the owner of coal lands leased the surface thereof to a tenant for years whose assignee mined and removed coal for a period of twenty-seven years, after which the reversioner, having stopped the commission of further waste by injunction proceedings, brought an action of trespass against the assignee of the tenant for the value of the coal mined, the finding of the court in the suit in equity that plaintiff did not have such notice of the trespass as to bar his right to the injunction on the ground of laches, was not an adjudication that plaintiff had no sufficient notice to start the running of the statute of limitations on claims for coal mined more than six years before the action was brought.

*Real estate—Title to land—Description—Court and jury.*

5. Where there is uncertainty as to what lands are included in a description or there is a doubt as to the boundaries or location or limits of land sold, evidence aliunde may be resorted to for the purpose of aiding a jury to determine what land was intended to be included in the grant.

6. Where the question whether or not eight acres of the land in suit had been included in a grant of the rest of the land of plaintiff depended on evidence, partly of record and partly oral, the court erred in not submitting it to the jury.

Argued April 16, 1913. Appeal, No. 373, Jan. T., 1912, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1910, No. 486, on verdict for plaintiff in case of The Trustees of the Proprietors of Kingston v. The Lehigh Valley Coal Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for coal unlawfully

mined and converted to defendant's use. Before STRAUSS, J.

The action was brought on July 15, 1910. Defendant's thirteenth and fourteenth points for charge, with the court's answers thereto, were as follows:

"13. Under all the evidence the plaintiff is not entitled to recover for any coal mined by defendant prior to July 15, 1904.

"Answer. That is denied.

"14. If the jury believe that by the exercise of reasonable vigilance and the use of the means of information within her reach the plaintiff might have known more than six years prior to July 15, 1910, that the defendant was mining on her land the plaintiff cannot recover for any coal so mined prior to July 15, 1904.

"Answer. If there were evidence in the case sufficient to submit that point to the jury we would have to affirm it; as it is, I deny it."

Other facts appear in the opinion of the Supreme Court, and in Trustees of Kingston v. L. V. Coal Co., 236 Pa. 350.

Verdict for plaintiff for $101,864.51, and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings of the trial judge, various instructions to the jury, and the refusal of the court to affirm the above points.

*John G. Johnson,* with him *P. F. O'Neill, J. B. Woodward* and *F. W. Wheaton,* for appellant.

*J. E. Jenkins,* with him *A. L. Turner* and *W. H. Goodwin,* for appellee.

OPINION BY MR. JUSTICE ELKIN, June 27, 1913:

This is an action of trespass to recover in damages the value of coal unlawfully mined and converted to its own use by the defendant company. The subject matter is a

small tract of land set apart by the original Connecticut settlers for certain purposes of a quasi public nature. In 1821 a committee representing the original settlers, or what was known as the Proprietors of Kingston, leased the tract in question to John Bennett for the term of 999 years, reserving a nominal annual rental. In 1822 The Trustees of the Proprietors of Kingston was created a corporation by an act of the legislature, which provided that the title should be transferred from the original committee to the corporation thus formed. Bennett went into possession under his lease and remained in possession until the time of his death in 1863. He evidently thought the tract in dispute here belonged to him absolutely, because he undertook to devise it in fee to his nephew, Stephen B. Vaughn, who went into possession after the death of his uncle and has retained possession from that time to the present either by himself or through his assigns. In 1882 Vaughn leased to appellant all the coal under the land in question, together with the coal underlying some contiguous small tracts owned by him in fee. The lease was duly recorded and the defendant began to operate the coal. The royalties were regularly paid to Vaughn according to the terms of the lease as the coal was mined down to 1910, when by a decree of the court further mining was enjoined. The royalties paid exceeded one hundred thousand dollars and in addition defendant paid taxes assessed upon the coal land aggregating upwards of twenty-five thousand dollars. As it subsequently developed the lessor and the lessee mistook their legal rights and are now paying the penalty for that mistake. In an equity proceeding between the same parties this court decided that the original lease to John Bennett was a lease of the surface only, and that if the lessee mines coal on the premises he commits waste which can be enjoined: Proprietors of Kingston v. L. V. Coal Co., 236 Pa. 350. It was also decided in that case that the appellant company did not own the coal and was not authorized by

the lease to remove it. By removing the coal it became a trespasser in contemplation of law and an action for damages would lie for the waste committed. This suit was brought to recover damages for the value of the coal mined and removed before the injunction issued. The plaintiff is the reversioner whose interest in the land will not become an estate in possession under the terms of the lease until more than nine centuries have elapsed. This means that those holding under the Bennett lease have possession of the land, including the coal which underlies it, and that this possession can be asserted against the reversioner as well as against all other parties so long as the lease is in force and effect. The reversioner is not entitled to any thing but the rental reserved which was ten cents annually, so that what is recovered by way of damages now will anticipate any profits which would otherwise accrue to the reversioner by more than nine hundred years. But notwithstanding this anomalous situation the reversioner is clearly entitled to its legal rights under the facts as they exist at the present time. Waste has been committed and the damages must be ascertained now although the reversioner is not entitled to possession for many centuries.

This appeal raises three important questions which we will consider in the order presented by counsel for appellant:

(1) The first question is whether the plaintiff is barred by the statute of limitations from recovering damages for the coal removed more than six years prior to the time of bringing suit. The Act of 1713 includes all forms of personal actions and provides that they shall be commenced within six years next after the cause of action has arisen and not thereafter. This statutory rule is of general application, and in most instances the burden of showing that it does not apply to a particular case is on the party who denies the bar of the statute. The mischief intended to be remedied by the statute was delay in the assertion of a legal right which it is practi-

cable to assert. This court held in Lowey v. Fricke Coke Co., 166 Pa. 536, that the statute of limitations only runs from discovery, or a time when discovery might have been made, in an action brought to recover damages for the unlawful mining of coal. We have carefully considered the subject of the proper application of the rule and have concluded that the doctrine of the case just cited should apply to the case at bar. In principle we see no reason for making a distinction in respect to the application of the statute of limitations between the present case and that one. It is true the reversioner brings the suit in the present case, but this it had the right to do, and by so doing it reaps the benefit of recovering a present sum by way of damages to the estate, the possession of which it cannot enjoy for centuries. Will it be pretended that the plaintiff, a reversioner, can sleep on its rights for nine hundred years and then bring suit for damages? Certainly no one would assert such an extreme position, and yet this in effect would be the result of the doctrine relied on by learned counsel for appellee. If the statute of limitations does not apply from the time the cause of action arose, or from the time of discovery, there is no limitation, and suit may be brought any time during the tenancy, or even after the land has reverted. It has been ruled over and over again that a person having an estate in remainder, or a reversionary interest, whether in fee, for life, or for years, may maintain an action on the case either against the tenant in possession or against a stranger, for an act necessarily injurious to the reversion or remainder. This is true even if the damages be only nominal. If, therefore, the reversioner has the right to sue for an injury to the estate, why should he not be required to exercise vigilance in the assertion of his legal rights? There can be but one answer to this question, and that is, the reversioner should exercise due diligence in protecting his estate, and if he desires to recover damages he should proceed within the six year period after he discovers, or should have discovered, the

injury about which he complains. In our opinion this doctrine applies to the case at bar. It is suggested that the statute of limitations is not a bar in an action brought by a trustee representing a trust estate, but this rule only applies between cestuis que trustent and trustees, and does not apply as between cestuis que trustent and trustees on one side, and strangers on the other: Smilie v. Biffle, 2 Pa. 52. It is also urged that the statute does not run against the plaintiff corporation because it holds title as trustee to the land in question for a charitable use. The statute makes no such exception and we find no conclusive authority in our State to sustain this position. We can see no reason for excusing a corporation which acts as trustee for a charity from exercising due diligence in the assertion of its legal rights against strangers; and if it be its duty to proceed diligently, it would seem to follow that the statutory rule should apply. · In this connection it must be remembered that the plaintiff has elected to bring a personal action and damages are claimed on the basis of the value of the coal appropriated. It is further contended for appellee that it was decided in the equity suit to which reference has been hereinbefore made, the reversioner did not have notice of the trespass, and that this was equivalent to a determination of the fact that the statute of limitations should not apply to the present case; in other words, that this question is res adjudicata. In answer it may be said that there was no occasion for setting up the bar of the statute in that case, except as it might possibly have a bearing as to the laches of the reversioner in seeking equitable relief. The question of laches was raised in the equity proceeding but it had reference to the subject matter of that controversy, which was disputed title to the land in question; and certainly it would be extending the equitable doctrine beyond anything yet decided in our cases to hold there was such a final adjudication then as to prevent the statute from ever again

being pleaded between the same parties, even in a personal action for damages in which a different subject matter is involved. We cannot, therefore, agree that this question as applied to the facts of the present case in a different form of action, and involving different subject matter, is res adjudicata. It is also suggested that the maxim nullum tempus occurrit republicae should apply, but we cannot give our assent to this proposition. This is the prerogative of the sovereign only and does not apply to corporations or artificial bodies created by her for special purposes. When the title of the Commonwealth has been divested, her grantees, though artificial bodies of her own creation, are in the same category as natural persons. It has been decided that the statute runs against a county or other municipal corporation: Evans v. Erie County, 66 Pa. 222. We therefore are constrained to hold that the statute began to run in the present case from the time the acting trustees of the plaintiff corporation had notice of the trespass, or from the time the trespass was first discovered, or from a time when it should have been discovered by the exercise of due diligence. This question is raised by the eighth and ninth assignments of error. We are not prepared to say that the learned trial judge should have affirmed defendants' thirteenth point without qualification. Under the facts the point was too broadly and definitely stated, and might have been refused for this reason. The fourteenth point should have been affirmed with proper instructions as to what the law requires in such cases. The jury should have been positively instructed that if the acting trustee, or trustees, had notice of the trespass, or if they had in fact discovered the trespass, or if they could have discovered it as prudent men desiring to protect the trust estate by making inquiry and exercising due diligence, it was their duty to do so, and that the statute began to run from discovery, or from a time when discovery might have been made. The jury should also

have been instructed that notice to the acting trustee, or trustees, was notice to the corporation, and if they had such notice more than six years prior to bringing the suit, or if they had discovered the trespass, or might have discovered it by making inquiry and exercising due diligence more than six years before instituting the action, the statute of limitations would be a bar to any claim for damages resulting from the trespass prior to the six year period.

(2) It is contended for appellant that the proper measure of damages in the present case is compensation to be ascertained by the difference between the market value of the land before and after the trespass as affected by the waste committed. The argument has much force and if the action had been brought to recover damages for a permanent injury to the tract of land in question it would be necessary to hold that this was the correct rule. It was so decided in Noonan v. Pardee, 200 Pa. 474; Rabe v. Shoenberger Coal Co., 213 Pa. 252; Weaver v. Berwind-White Coal Co., 216 Pa. 195, and this must be considered the settled rule in that class of cases. In the case at bar the action was brought not for permanent injuries to the land, but for the value of the coal removed. There can be no doubt that one whose property has been wrongfully taken and appropriated to the use of another may sue for the value of the property thus appropriated: Forsyth v. Wells, 41 Pa. 291. Just compensation is the rule by which to measure the damages to the complaining party. As applied to the facts of the present case, this means the value of the coal in place, but as to the proper method of determining that value our cases are not in entire harmony. We agree with the suggestion of counsel for appellant that the best statement of the rule in any of our cases is found in the instruction of the trial judge in Oak Ridge Coal Co. v. Rogers, 108 Pa. 147. In that case the jury were instructed as follows: "The measure of damages is the fair market value of the coal at the place there. If

there is a market price in place, in the pit or mine, that
would be the value you would put upon it, and if there is
evidence from which you can find what it was worth be-
fore it was touched, it is your duty to do so. If there is
no evidence to fix the value in place, what would it be
worth at the pit mouth, deducting all the cost of bring-
ing it there, or if there is no evidence from which you
can fix the value either in place or at the pit mouth, then
you may find what it was worth at a distant market, de-
ducting what it was worth to take it there." Our court
in reviewing that case said: "The charge as to the meas-
ure of damages is very fair. It declares the measure of
damages is the fair value of the coal in place. If, how-
ever, the evidence failed to fix the value there, then the
measure would be what it was worth at the pit's mouth,
or in a distant market, deducting therefrom what it
would cost to take it there. This instruction did not
allow speculative damages. It indicated the proper way
of ascertaining the actual damages." This case has been
relied on frequently to sustain the contention that in
such cases there are three methods of determining the
value of coal in place, and that it is within the legal
right of the complaining party to claim damages on the
basis of the method most advantageous to him. This is
clearly an erroneous view not only of what was decided
in that case, but of the law. What was said in that case
must be understood as applicable to the evidence pro-
duced at the trial. It was expressly stated in the court
below and here that the proper method of measuring the
damages was the fair value of the coal in place, and if
there had been evidence of that value, it would have been
the duty of the trial judge to have so instructed the jury.
It is only in cases where there was no evidence of the
actual value of the coal in place, that the courts per-
mitted the jury to find the value at the pit's mouth, de-
ducting therefrom what it would cost to mine and trans-
port it there. But it should be understood as a settled
rule that if there is evidence to show the value of the

coal in place, this is the proper measure of damages and no other method should be allowed. The jury should be so instructed. It is only in cases where the evidence fails to fix the value of the coal in place, that the alternative method of measuring the damages may be adopted, and such instances are exceptional and very rare. The exception should not be enlarged so as to become the prevailing rule. The primary and basic rule should always be applied if there is evidence sufficient to warrant a finding by the jury of the value of the coal in place. But this raises another question and one not free from difficulty. What is the proper method of determining the value of the coal in place? This must necessarily depend to a considerable extent upon the facts and circumstances of the particular case. At most courts can only indicate general rules for the guidance of those who have to do with the trial of such causes. Ordinarily the value of coal in place is understood to mean its value in a state of nature; in other words, its acreage value in a solid body. As to virgin, undeveloped coal, this is a primary rule for ascertaining the value of coal in place. This primary rule should likewise prevail except in those cases in which by reason of the location of the coal, its proximity to mining operations, or its accessibility to transportation facilities, it has a present market value on the royalty basis. If the injured party owns a tract of coal land which has a present market value for operation as a going mine, and it has a market value for operating purposes at a price per ton, that is what is known as a royalty, he should not be deprived of the advantage which the situation of his property gives him, and in such a case it is proper to allow a recovery on the basis of royalty value. In the present case we think there can be no doubt that the coal land in question was so situated and was in such close proximity to going mines that it had a royalty value as coal in place. The fact that it was leased and operated on a royalty shows conclusively it was available for the market upon this

basis. In all such cases it is important to keep in mind that speculative damages are never allowed and the whole course of the trial should be directed to the end that only just compensation shall be recovered. The value of the coal in place must be ascertained as of the time when the trespass was committed. It must be the actual market value of the coal in place at that time, not prospective value in the future when conditions may have changed and the value of coal increased.

(3) It is also argued that the plaintiff failed to prove title to what is called the eight acre tract and hence is not entitled to recover damages for coal mined and removed from it. If in point of fact plaintiff had no title to this small tract it can assert no claim for damages for a trespass upon it. At the trial this was reserved as a question of law for the court and upon consideration it was decided in favor of plaintiff. This conclusion of the court has been assigned for error and according to our view the assignment must be sustained. Under the facts this was a question for the jury and not for the court. The contention of appellee is that the question of title was decided in its favor in the equity case above referred to, and that it is res adjudicata. We have carefully examined the equity case in order to determine whether this position is correct, but have failed to find anything to warrant such a conclusion. The bill filed in that case described the tract by exact courses and distances and the record shows that the patent only called for 26 acres and 6 perches. It was the title to the tract thus described that was involved in the equity proceeding. How then can it be fairly said that the title to the 8-acre tract formed part of the subject matter of that controversy, or that what was decided there makes the question of title to the small tract, not then in dispute, res adjudicata? To so hold would be to extend the res adjudicata doctrine far beyond anything yet decided in our cases. When there is uncertainty as to what lands are included in the description, or there is a doubt

as to the boundaries, or location, or limits of land sold, evidence aliunde may be resorted to for the purpose of aiding a jury to determine what land was intended to be included in the grant: Hoffman v. Danner, 14 Pa. 25. The description of land conveyed, its limits and contents, are often mixed questions of law and fact: Collins v. Rush, 7 S. & R. 147. Under the doctrine of these and other cases of similar import the question of title to the 8-acre tract should have been submitted to the jury. Whether the title to this small tract was in the Commonwealth, or in the appellee, or in some one else, depended upon many facts, some of record and others aliunde, and it was the province of the jury to pass upon all the evidence and determine whether title was in the plaintiff.

We have not discussed the assignments of error in detail but have indicated our view as to the material questions raised by this appeal. As it will be necessary to again try the case, what is here said will be a guide to all those who have to do with the trial.

Judgment reversed and a venire facias de novo awarded.