## Stark, et al., v. Pennsylvania Coal Co., Appellant.

*Trespass—Trespass for taking coal—Mines and mining—Real property — Adverse possession — Conflicting surveys — Referee — Findings of fact—Measure of damages—Royalty.*

1. Upon a dispute between the alleged owner of certain real property and a coal mining company, which it was claimed had

trespassed upon the land in question and mined coal thereon, a finding of the referee that the defendant had not had adverse possession of the premises will be sustained, where the evidence of defendant showed merely that a portion of the ground had been used for the deposit of culm and fine coal too small for market and that a railroad siding had been laid across it, but that there had been no enclosure or cultivation of the land or exclusive occupation thereof.

2. Where there is a dispute between two parties as to the location of a line separating two tracts of land, and there are conflicting surveys and conflicting evidence by surveyors, a finding by the referee, determining the true location of the line, confirmed by the court below will not be reversed in the absence of manifest error.

3. In an action of trespass for damages for the taking and carrying away of coal underlying plaintiff's land, where it appeared that the defendant had mined the coal under an honest mistake as to its rights, the proper measure of damages is the fair value of the coal in place at the time of the taking; and, under ordinary circumstances, that is to be determined by the royalty which such coal would have commanded.

Argued May 5, 1913.   Appeal, No. 224, Jan. T., 1912, by defendant, from judgment of C. P. Lackawanna Co., May T., 1904, No. 12, for plaintiff in case of Edgar W. Stark, John W. Stark and Edgar W. Stark, Administrator d. b. n. c. t. a. of Conrad S. Stark, deceased, v. Pennsylvania Coal Company.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Trespass to recover damages for the mining of coal. Before NEWCOMB, J.

The facts appear in the opinion of the Supreme Court.

The case was referred to referee, Wm. W. Lathrope, Esq., who found in favor of the plaintiff in the amount of $5,292.50, with interest.   Exceptions to the report of the referee were dismissed by the court.   Defendant appealed.

*Error assigned* was in dismissing exceptions to the referee's report.

*Everett Warren,* of *Warren, Knapp & O'Malley,* for appellant.

*Samuel B. Price,* with him *J. H. Torrey, Cole B. Price* and *John H. Price,* for appellees.

OPINION BY MR. JUSTICE POTTER, June 27, 1913:

This was an action of trespass in which the plaintiffs sought to recover damages from the defendant for the mining of coal upon a small tract of land to which the plaintiffs claimed title. The controversy is as to the location of what is known as the George T. Smith tract. Plaintiffs claimed this tract under a patent for six acres and thirty perches of land issued by the Commonwealth on June 16, 1870. Defendant claimed under a warrant issued on August 26, 1802, to William H. Smith, and a patent issued on June 5, 1870, to Thomas Wright, which covered two hundred and twenty-two acres of land adjoining the land subsequently patented to George T. Smith, and which it is alleged included the tract of land here in question. Under the belief that it was so included, the defendant extended its underground operations into the tract in question from its workings upon the adjoining tract. The size and shape of the George T. Smith tract is not in controversy. Its location is merely shifted about fifteen rods one way or the other, as the varying contentions of one side or the other may be sustained.

By agreement of the parties the case was submitted to a referee, who found in favor of the plaintiffs, and assessed the damages at $1.00 per ton, which, with interest allowed for detention of payment, amounted to $5,292.50. Exceptions to his report were overruled by the court below, and the report was confirmed, and judgment was entered in favor of the plaintiffs and against the defendant for the amount of damages assessed by the referee. The defendant has appealed, and the first position assumed by its counsel is that the plaintiffs

have never had actual possession of the premises in dispute, and the defendant has been in actual possession thereof under a claim of title for many years. The referee finds as a matter of fact that at the time of the trespass there was upon the surface of the land no residence, no cultivation and no fence. The defendant was using a portion of the ground by depositing thereon culm and fine coal too small for the market. He cites several decisions in support of his conclusion that the use which defendant made of the land was not sufficient to constitute possession under the law. In one of these cases, Olewine v. Messmore, 128 Pa. 470, Mr. Justice CLARK said (p. 482) : "It is essential to the validity of an adverse possession that there shall be an actual entry upon the land of the rightful owner, and an actual, visible possession taken of some part of it. Residence and possession, with cultivation on adjoining land, with boundaries including the valid title of another, will not give actual possession of the latter, although accompanied by the ordinary use of it as woodland, in connection with the part resided upon or cultivated......And it (actual possession) does not consist in doing temporary acts upon the land without an intention to seat and occupy it for residence or cultivation, or for some other permanent use consistent with the nature of the property." It is perhaps a close question whether the acts of the defendant in depositing the culm on the surface of the land and the laying of a railroad track across it, do not bring the case within the definition of possession stated above. But as the referee has made a finding of fact in favor of the plaintiffs upon this point, we do not feel inclined to disturb it, the more so because the mining of the coal which is the basis of the present suit was unknown to plaintiffs at the time it occurred and for years afterwards. There was nothing upon the surface to indicate that such work was going on, and the mining would not in itself constitute possession. It was not visible nor was it notorious.

The important thing after all, in order to settle this controversy, is to determine the proper location of the boundary line between the senior warrant of the defendant and the junior warrant of plaintiffs. The tracts of land belonging to the two parties have certain courses and distances in common. The last course and distance common to both tracts which is "thence across the Lackawanna river south 19 degrees east 23 rods to a corner," is the line in dispute upon which the case turns. If the location of this line, as claimed by plaintiffs, is correct then the defendant has taken coal from the plaintiffs' land. If the location be as contended for by the defendant, then it has not taken any coal from plaintiffs' land. The determination of the proper location of the line was peculiarly a question of fact. The surveys were conflicting, and so was the evidence of the surveyors. As the referee says, the plaintiffs' surveyors start from a corner which is generally recognized as a common corner of the Pine lots, the Miller tract and the George T. Smith tract. The defendant's surveyors locate the disputed line by starting from the eastern line of the Hooker Smith tract, being the boundary line between it and the Thomas Wright tract. The referee then says, "The evidence as to said boundary line does not seem to me to be as satisfactory as the evidence of the location of the line between the Miller tract and the Pine lots upon which the plaintiffs' surveyors rely." While admitting that the case is not free from difficulty, the referee reaches the final conclusion that the method adopted by the plaintiffs' surveyors is more reliable than that of the defendant's surveyors. The finding of fact as to where the proper location of the line was, which was thus determined by the referee, was confirmed by the court below. To successfully challenge his finding, it is not enough to point to evidence that would support a different conclusion. It must be shown that there is no evidence sufficient to sustain the finding of the referee: Philadelphia Company *v.* U. G. I. Co., 180 Pa.

235. In the absence of evidence showing manifest error in the referee's finding of fact as to the location of this disputed line, we are not at liberty to disturb it.

But in the measure of damages adopted and applied by the referee, there was manifest error. Instead of adopting the royalty rate which was proven, he fixed the rate of $1.00 per ton as the value of the coal in place. This was we think, under the evidence, an exorbitant allowance. When the coal in question was mined, the defendant was not aware that it was working upon the land of another. It was mistaken, but the mistake was an innocent one. It was acting at all times under a bona fide claim of ownership. In Coleman's Appeal, 62 Pa. 252, this court said (p. 278) : "Where a trespass has been committed, if innocently and unintentionally, by working over a party's own line into his neighbor's adjacent tract, the measure of damages is—besides any actual injury to the land—the value of the mineral or timber taken in place, or at the farthest when first severed." Both parties agree here that the proper measure of damages is the fair value of the coal in place at the time of taking. If as is admitted, the defendant acted fairly and honestly and in the full belief that it had a right to the coal, then the damages are to be fairly measured by giving to the plaintiffs the fair purchase price of the coal. The best evidence of this value is the amount of royalty which such coal would command, for that is presumptively all that the owners of the coal could have obtained for it had the coal been sold. This is particularly true in the present case, where the plaintiffs had so small a quantity of coal, there being but a little more than six acres, which would not in all probability warrant an independent operation; so that plaintiffs' only reasonable way of disposing of it would be upon a royalty to some adjoining operator. There was evidence clearly showing the royalty value, and that should have been adopted as the proper measure of plaintiffs' damages. That a royalty is the correct meas-

ure of damages in such a case as this, where the coal is in proximity to mining operations, has been flatly ruled in two opinions by our Brother ELKIN, handed down herewith, in Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Company, 241 Pa. 469, 481. The whole subject is there elaborately discussed, and the rulings are controlling here.

Being of opinion that under the facts of this case the proper measure of damages was not applied, we sustain the eleventh, twelfth and thirteenth assignments of error. The judgment is reversed, and the record is remitted to the court below, with directions to compute the damages at the rate of royalty prevalent at the time when the coal was taken, with due allowance in addition for detention.