# Matthews, Appellant, *v.* Rush.

*Mines and mining—Wrongful mining of coal—Treble damages—Act of May 8, 1876, P. L. 142.*

1. The measure of damages for an innocent taking of coal from under the lands of another, is ordinarily its value in place.

2. The Act of May 8, 1876, P. L. 142, is highly penal, and does not justify the awarding of treble damages, unless defendants knowingly took the coal from under the lands of another.

3. Under that act knowledge of the superintendent of the mine is not knowledge of the individual owners thereof.

4. As there was no proof or offer of proof of any profits made from the coal taken from under plaintiff's land, the question whether or not defendants would be liable for such profits, if any, is not decided.

Argued Oct. 4, 1918.   Appeal, No. 115, Oct. T., 1918, by plaintiff, from judgment of C. P. Westmoreland Co., Aug. T., 1917, No. 273, on verdict for plaintiff in case of Minnie F. Matthews and J. H. Matthews, her husband, in right of said wife and for her use, and Nora A. Fox, v. Logan Rush and W. E. Rice, partners, trading as Tyrone Coal Company.   Before BROWN, C. J., STEWART, WALLING, SIMPSON and FOX, JJ.   Affirmed.

Trespass for alleged wrongful mining of coal.   Before COPELAND, P. J., specially presiding.

At the trial the jury returned a verdict for plaintiff for $2,201.19, on which judgment was entered.

*Errors assigned* were various rulings on evidence and instructions, sufficiently appearing by the opinion of the Supreme Court.

*Jno. E. Kunkle,* for appellants.—The knowledge and acts of Dougal, the agent of the defendants, are the knowledge and acts of the defendants: Langenheim v. Anschutz-Bradberry Co., 2 Pa. Superior Ct. 285; Philadelphia v. Lockhardt, 73 Pa. 211; Knight v. Ratcliff, 44 Pa. 156.

The court below adopted the wrong measure of damages under the facts in this case: Seely v. Alden, 61 Pa. 302; Rogers v. Bemus, 69 Pa. 432; Theiss v. Weiss, 166 Pa. 9; Becker v. Lebanon & Myerstown Street Ry. Co., 25 Pa. Superior Ct. 367; Forsyth v. Wells, 41 Pa. 291; Crawford v. Forest Oil Co., 208 Pa. 5; Lykens Valley Coal Co. v. Dock, 62 Pa. 232; Foster v. Weaver, 118 Pa. 42; Herdic v. Young, 55 Pa. 176.

*Charles E. Whitten,* with him *Paul H. Gaither,* for appellees.—Notice to Dougal, defendants' mine foreman,

was not sufficient to warrant the assessment of the penalty of treble damages, in the absence of any proof that the defendants knew that they were committing a trespass: Rhoads v. Quemahoning Coal Co., 238 Pa. 283; Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Co., 241 Pa. 481.

OPINION BY MR. JUSTICE SIMPSON, January 4, 1919:

The statement of claim in this case averred plaintiffs were the owners of a tract of land, adjoining another tract from which defendants were mining coal; that in the course of their operations defendants knowingly removed, and converted to their own use, coal from under plaintiffs' land; and that certain other coal underlying said land became valueless by reason of defendants' acts, because it would be unprofitable to mine it; wherefore plaintiff claimed treble damages for the coal actually taken and converted, and single damages for the coal rendered valueless.

There was no dispute as to the taking or the quantity taken, or as to the quantity of coal rendered valueless, but knowledge of the trespass was denied, as was also the value of the coal and the right to treble damages. The principal dispute, on the question of knowledge, grew out of a claim by plaintiffs that the knowledge of defendants' superintendent was so far the knowledge of defendants themselves as to make them liable for treble damages under the Act of May 8, 1876, P. L. 142.

The trial judge charged the jury that the measure of damages was the value of the coal in place, and not its value at the tipple, less the cost of mining and conveying it there; that the knowledge of the superintendent was not the knowledge of defendants; but, if the jury found the defendants themselves knew they were taking plaintiffs' coal, they would be liable in treble damages, otherwise they would be liable only for single damages. The jury found a verdict for plaintiffs for single damages for the value in place of the coal taken, and for the

other coal rendered valueless, and, judgment being entered on the verdict, plaintiffs appeal.

The assignments of error group themselves into three classes: 1. Was the measure of single damages for the coal taken, its value in place, or its value at the tipple less the cost of mining and conveying it there? 2. Was knowledge of the superintendent so far knowledge of defendants as to make them liable for treble damages under said act? 3. Are defendants also liable to plaintiffs for the profits defendants made on the sale of the coal?

In Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Co., 241 Pa. 469, we held that where, as here, the claim is for a conversion of the coal, and the jury find the taking was not tortious, the measure of damages is ordinarily the value in place, and not the value at the tipple less the expense of mining and conveying it there. We do not say circumstances may not arise calling for the application of a different rule, but none such are averred in the statement of claim, or shown by the evidence, and in the absence of such averment and proof the ordinary rule must be followed.

The Act of May 8, 1876, P. L. 142, is highly penal, and cannot be extended beyond the terms expressed in it. Indeed the liability to treble damages is expressly conditioned upon such facts appearing as would justify the conviction of defendants of a misdemeanor. The act says that such conviction, or the imposition of treble damages, is allowable if the defendants dug the coal "knowing the same to be upon the lands of another." It is not infrequently said that knowledge acquired by an agent in the course of the agency, is knowledge of the principal. A more accurate way of stating it would be that knowledge so acquired is binding upon the principal so far as concerns the ordinary business of the agency. But it is not actual knowledge of the principal; and the recovery of treble damages under the Act of 1876, is conditioned on actual knowledge. This was our conclu-

sion in Rhoads v. Quemahoning Coal Company, 238 Pa. 283, and it is sound in principle. Hence we adhere to it.

We are aware it has been held in other states that one who takes wrongful possession of and converts to his own use another's property, will be required to account to the real owner for any profit made thereout, whether the taking was innocent or tortious, and this upon the principle that a wrongdoer will not be permitted to make a profit out of his wrong. Whether that principle is applicable in this class of cases, and, if it is, in what form of action and upon what pleadings it may be applied, we prefer to leave for consideration until such time as those questions are squarely raised on the record. In the instant case they are not.

By their point, embodied in the fifth assignment of error, plaintiff asked the trial judge to charge the jury that defendants could not legally make a profit or benefit out of their wrongful taking of plaintiffs' coal, but must pay all such profits to plaintiffs. As there was no evidence of such profits, of course the affirmance of that point would not have benefited plaintiffs. It was in fact affirmed "as an abstract question of law, having no bearing on the question of damages in this case."

Nor was there any clear offer of proof to show what profits, if any, defendants made on the sale of the coal, nor any averment in the statement of claim that profits were made. In the seventh assignment of error there is set forth an offer to show certain facts "for the purpose of fixing the value of the coal in place." Enumerated among those facts was one that the mines were operated at a profit. But that was far from an offer to prove the profits made by defendants as a basis of recovery. When read in its entirety the offer was to prove that the value of the coal in place was really its value at the tipple less the cost of mining and bringing it there.

The eleventh assignment quotes another offer of evidence made at the trial as follows: "The court having

overruled our offer to prove the value of the coal on board cars, we now propose to prove by the witness on the stand the selling price of the coal wrongfully removed from the Fox heirs' tract of land; also propose to prove by the witness, in addition to the selling price of our coal, the cost of mining and placing the same on cars, for the further purpose of establishing the measure of damages sustained by the plaintiffs, and also of showing the advance over the cost of mining and putting the coal on board cars to be the difference between the value on board cars and the cost of mining. This is to be taken as the basis of the damages suffered by the plaintiffs, for the reason that these defendants, after the separation of the coal by mining it, created a personal property which belonged to the plaintiffs, and when they sold and converted the same to their own use they are bound to account to the plaintiffs for the net amount that they received for any sale of plaintiffs' coal." This also is not an offer to prove the profits which defendants made, but only the selling price and the cost of mining the coal and putting it on board cars. It was only another attempt to avoid our decision in Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Company, supra, where we showed that other items than those stated, enter into the consideration of the expense of the coal to defendants. No other assignment even suggests the question now under consideration.

The judgment of the court below is affirmed.