## Telford Coal Company v. Prothero et al.

*H. B. Mainhart* and *H. S. Endsley,* for plaintiff.

*F. P. Barnhart, William Fox, C. A. Fox, E. C. Van Scoyoc, F. J. Hartmann,* and *Raymond Fox,* for defendants.

McKENRICK, J., January 31, 1935. — Telford Coal Company, a corporation, brought an action in trespass against Harry B. Prothero and Alice G. Prothero, individually and as executors of W. B. Prothero, deceased, and William Fox, E. C. Van Scoyoc and C. A. Fox. The action was brought to recover damages for the wrongful mining of coal from the land of the plaintiff.

Telford Coal Company was the undisputed owner of a tract of land in Stonycreek Township, Cambria County. Five acres of this tract was underlaid with a seam of "B" or "Lemmon" coal, and this 5-acre piece was leased by the plaintiff to Fred Gertz on January 15, 1932.

W. B. Prothero was the owner of a tract of land underlaid with coal and had a mining operation on his said land known as the Prothero Mine. The tract of the plaintiff corporation adjoined the tract of W. B. Prothero. W. B. Prothero died June 24, 1926, and by his last will and testament devised the mine known as the Prothero Mine to his son, Harry B. Prothero, naming the said Harry B. Prothero and Alice G. Prothero as his executors.

On June 15, 1925, during his lifetime, W. B. Prothero

leased the Prothero Mine to C. A. Fox, E. C. Van Scoyoc, and William Fox for a royalty of 50 cents per ton of coal. About September, 1925, the said lessees of the Prothero Mine began operations and during the years 1925, 1926, and 1927 mined not only the coal upon the leased tract, but also coal belonging to the plaintiff.

The mining operations were carried on under the directions of W. B. Prothero, and after his death under the directions of Harry B. Prothero. The engineer in charge during all the operations was L. R. Owen, who was acting for the lessors. One of the lessees testified that no map was ever furnished, but that the work was directed by the engineer and the Protheros. Harry B. Prothero was in the mine frequently when the plaintiff's coal was being mined.

Royalty was paid for all the coal mined from plaintiff's land to W. B. Prothero and Harry B. Prothero, but no record was kept of the amount of royalty paid to each, or the quantity of coal mined. The total amount of coal mined from the plaintiff's tract and appropriated by the defendants was estimated at 2473.64 net tons. The plaintiff also claimed that in the mining of the coal one half an acre of coal, or between twenty-six and twenty-seven hundred net tons remaining, was damaged. The original claim that defendants wilfully and knowingly mined plaintiff's coal was abandoned and only simple damages were claimed at the trial.

Some time in 1928, Harry B. Prothero learned that the lessees of W. B. Prothero and himself had mined across the line and removed some of the plaintiff's coal. He did not inform the plaintiff what he had learned, but instead endeavored to make an exchange of land. The plaintiff had no knowledge that this coal was being mined until September of 1932, when plaintiff's engineer was directed to make a survey and the encroachment was discovered.

There is no question in this case concerning the fact that the plaintiff's coal was unlawfully mined by the

lessees of the Protheros, and that the Protheros received royalty on all the coal so mined at the rate of 50 cents per ton. The defendants, however, set up several contentions with respect to their individual liabilities. As to W. B. Prothero, counsel contend that the statute of limitations has become a bar. They interpose the provisions of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of May 2, 1925, P. L. 442, 20 PS §772: "All actions for . . . trespass to real property . . . which were not barred by the statutes of limitation at the time of the death of decedent [and which might have been maintained against such decedent if he had lived], may be brought against his executors or administrators at any time within one year after the death of the decedent". W. B. Prothero died on June 24, 1926, and suit was not instituted until December 5, 1932.

The general rule is that the 6-year limitation period for wrongful removal and conversion of coal runs from the time of the discovery of the said trespasses or the time when the trespasses could have been discovered by the exercise of reasonable diligence: Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Co. (No. 1), 241·Pa. 469; Lewey v. H. C. Fricke Coke Co., 166 Pa. 536; Gotshall v. J. Langdon & Co., 16 Pa. Superior Ct. 158. Manifestly, section 35(b) of the Fiduciaries Act would apply only to actions, the cause of which were known to the injured claimant at the time of decedent's death. That amendment could have no application where plaintiff's property had been wrongfully and clandestinely taken, where such taking was neither open nor visible, and where the discovery was not made known until after the death of W. B. Prothero, whose lessees took plaintiff's coal and paid royalties thereon to him. Statutes of limitation are designed to prevent the assertion of stale claims after the witnesses have died or the evidence has been lost. Such statutes were never intended to permit one to enrich himself at the expense of another who had no means of finding out the truth.

The Protheros were in control and directed the mining of the coal by their lessees. If they had furnished Fox and his partners with a map, or had prepared a proper one for themselves, they would have known in 1925 that they were mining plaintiff's coal and receiving royalties to which they were not entitled, and it would have become their duty upon receiving such knowledge to inform the plaintiff and pay him for the coal already taken. Instead, they conducted their operation in a careless manner, permitted their lessees, who were ignorant of the true facts, to mine the coal, pocketed the royalties thereon, and now complain because plaintiff did not know what he could not be expected to know and had no means of knowing. If the statute invoked is applicable to a situation such as the present one, then any person could mine his neighbor's coal, build up an estate, however large, composed entirely of the proceeds derived wrongfully from the use of his neighbor's property, and pass that estate on to his heirs free from the claims of the rightful owner merely because the trespass was not discovered until the trespasser had died. We decline to take that view of the matter. The wrong was done to the plaintiff when its coal was removed by the lessees of W. B. Prothero during his lifetime, and under his direction and that of his engineer, although the wrong was not discovered until after his death. The action was instituted promptly after discovery and no laches can be imputed to the plaintiff.

The case of The Methodist Episcopal Church of Dayton v. Rench's Admr., 7 Ohio St. 369, cited in defendants' brief, is not in point, as we view it. The court says in that opinion, and the statement is the crux of the whole case: "No specific wrong having been suffered by the plaintiff from Rench or his acts in his lifetime—there was no cause of action to survive the decease of Rench." In the present case, the evidence is clear that a specific wrong was suffered by the plaintiff during the lifetime of W. B. Prothero. Some of the mining and removal of

plaintiff's coal was done by W. B. Prothero's agents and lessees, and all of the mining and removal was done under the very lease made by W. B. Prothero and handed down by him to Harry B. Prothero, and the royalties were received by Prothero and his personal representatives. There was a continuing trespass by the lessees and agents of the lessors. It has been held that the lessors of a coal mine are liable as co-trespassers for the act of the lessee in mining coal in land of an adjoining landowner. In the case of Dundas v. Muhlenberg's Execs., 35 Pa. 351, the court said that as the greater part of the coal so taken was paid by the lessee to the lessors as rental, the lessors were trespassers with the lessee.

Defendants further contend that the torts were committed by several wrongdoers, hence the plaintiff could not join them all in one action. The entire trespass or wrongful removal of plaintiff's coal was perpetrated and done under the contract or lease made by W. B. Prothero, and his executors or personal representatives merely continued operations under that contract and were merely carrying out the lease as made. There was at all times community of responsibility between W. B. Prothero, his personal representatives and the lessees. No books were kept by the Protheros to show how much royalty was received on plaintiff's coal. All the coal was mined and removed under the same lease upon the same terms and by the same lessees. We are of opinion there was no misjoinder as to W. B. Prothero, his executors and Harry B. Prothero individually.

As to the claim of William Fox, that he had no part in the illegal mining, the evidence shows that he was a party to the lease and it must be presumed that he profited by the sale of plaintiff's coal. The contract relation of the three lessees renders them liable as joint trespassers for the value of the coal mined and destroyed. There is no evidence that any of the lessees were released or discharged from liability, and they continued to act from the inception of the lease up to June 1928.

As to the liability of Alice G. Prothero individually, we must take a different view. There is nothing in the case, in our opinion, which would impose liability upon her as an individual. As to Alice G. Prothero individually, we will direct judgment non obstante veredicto.

There remains for consideration one more question: Did the trial judge apply the proper rules to determine the value of the coal actually removed and the coal damaged? Under the peculiar facts in this case we are not convinced that the rule of damages laid down by us was erroneous. The issues of fact and the testimony as to values were fully submitted to the jury under, we believe, proper instructions. The verdict of $694.60 was a modest one and fully warranted by the evidence.

## Decree

And now, January 31, 1935, the motion of Alice G. Prothero individually, for judgment n. o. v. is sustained; the motions of William Fox for a new trial and for judgment n. o. v. are overruled; the motion of Harry B. Prothero and Alice G. Prothero, executors of W. B. Prothero, deceased, and the motion of Harry B. Prothero individually, for judgment n. o. v. are overruled. The prothonotary is hereby directed to enter judgment upon the verdict against Harry B. Prothero and Alice G. Prothero, executors of W. B. Prothero, deceased, Harry B. Prothero individually, and William Fox, E. C. Van Scoyoc and C. A. Fox upon the payment of the jury fee.