420 A.2d 754

**Nancy T. SMITH, Appellant,**

v.

**BENJAMIN COAL COMPANY, INC.,**

v.

**R. Edward FERRARO.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed June 27, 1980.

84

Robert M. Hanak, Reynoldsville, for appellant.

F. Cortez Bell, Jr., Clearfield, for Benjamin Coal, appellee.

David L. Young, Brockway, for Ferraro, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant, the owner of coal rights, brought an action in Equity to enjoin the strip–mining of her coal by defendant. Benjamin Coal Company, and to recover damages for coal already removed by defendant. Mr. R. Edward Ferraro claimed ownership of the coal and leased the coal to Benjamin but "only to the extent that . . . LESSOR owns and may lease the same". Mr. Ferraro was permitted to intervene in the case as an additional defendant.

Trial was bifurcated as to the issues of ownership and damages. The ownership issue was resolved in favor of appellant by stipulation of the parties after a survey was made of the surface. Further hearing was held before the Chancellor on the amount of damages to be awarded to appellant. The court awarded damages in the amount of $57,381.15 ($1.50 times 38,254.1 tons), plus compensation for delay in payment (at the rate of 6%); however, the court refused to award punitive or exemplary damages, on the principal ground that such damages are not recoverable in an action in equity. The case is before us on appeal from the Order of February 20, 1979, with appellant challenging the standard used by the lower court to measure the damages, and challenging the adequacy of the award.

The lower court has made the following findings:

1. That the plaintiff owned the coal;

2. That Ferraro claimed to own the coal pursuant to a deed from the Treasurer of Jefferson County;

3. That one James Wilson owned the surface rights;

4. That Benjamin was informed by Wilson that Wilson thought plaintiff owned the coal;

5. That Benjamin contacted plaintiff in October 1975 about leasing the coal, and that plaintiff asserted ownership but was not then interested in leasing the coal;

6. That Wilson then informed Benjamin that the assessment records in the courthouse indicated that Ferraro owned the coal;

7. That Benjamin went to the Assessor's Office and was informed that Ferraro owned the coal;

8. That Benjamin did not have anyone search the title to the case;

9. That Benjamin took a lease from Ferraro on November 28, 1975, agreeing to pay royalties of $1.50 per ton;

10. That Benjamin began to mine the coal on March 2, 1976, over the protests of plaintiff;

11. That plaintiff filed her complaint in equity on May 13, 1976;

12. That Benjamin continued to mine until June 3, 1976, on which date the court's injunction was served on Benjamin;

13. That Benjamin mined 38,254.1 tons of coal, which was sold by Benjamin for $20 per ton; and

14. That the fair value of the coal "in place" was $1.50 per ton.

Appellant's argument on appeal to our Court is as follows:

In a situation where coal has been trespassed or mined without consent of the actual owner, an award of damages based on the royalty value that the wrongfully mined coal would command is extremely unfair. In strip mining situations, if the wrongdoer must only pay the royalty value of the coal wrongfully taken by his tortious conduct, the wrongdoer will make his ordinary profit, and be rewarded for his wrongdoing. An award of damages based on the mesne profits of the wrongdoer is more equitable because it denies the wrongdoer from benefiting by his conduct, and any profits would go to the aggrieved landowner. Prior case holdings which allowed royalty

value damages in coal trespass cases involved deep mine coal trespasses. The ruling of these cases should not apply to strip mine or surface mine coal trespass cases.

The lower court found that the fair value of the coal in place was $1.50 per ton, which was the amount of royalty Benjamin had agreed to pay Ferraro in the lease executed by him. There is no evidence on record which would establish a higher royalty rate, although appellant tried to establish a higher rate by cross–examination of defendant's general manager. Relying on *Trustees of Kingston v. Lehigh Valley Coal Co.*, 241 Pa. 469, 88 A. 763 (1913), and two other cases of the same vintage, the lower court concluded that the damages to be awarded for conversion of coal in place should be the fair market value of the coal in place at the time of taking, which amount would be determined by the royalty which such coal would have commanded when removed.

Appellant points out that she would have received exactly the same compensation if she had consented to lease the coal to defendant originally.

Appellant argues that until 1972 a Pennsylvania statute allowed double or treble damages in conversion of coal trespass cases.

Appellant further argues that:

A holding that royalty is the standard would result in an unfair conclusion for the following reasons:

(a) An award of royalty damage would allow the Defendant to earn his normal profit from his wrongdoing.

(b) The general theory of the law of remedies is that a wrongdoer should not profit by his tort, innocent or otherwise.

(c) Allowing a royalty standard would indicate that coal companies could freely trespass on other's coal ownerships without leases or coal rights, feeling secure that they would only be penalized by what they would otherwise have had to pay if the owner consented to a standard lease.

(d) A royalty standard would not allow protection to coal owners to hold their coal for further appreciation, when a wrongdoer could enter without risk of penalty.

(e) The reasoning of cases holding a royalty standard recognized the total commitment to one area by a coal company because of the capital investment of establishing a deep coal mine. Those factors are not present in the strip mine industry which, by its very nature, allows greater mobility.

(f) Defendant's cases referring to royalty indicate that royalty was chosen as a standard because of indeterminate cost factors inherent in the deep mine process. In the instant case the Defendant's records are readily available regarding this site.

We find merit to appellant's arguments.

*Trustees of Kingston* (No. 1), supra, applied a royalty standard for determining damages because it seemed to be the best available standard based on the evidence available in that case, however the court noted that "just compensation" was the rule by which to measure the damages to the complaining party.

In a companion suit, *Trustees of Kingston* (No. 2), 241 Pa. 481, 88 A. 768 (1913), the court again used the phrase "just compensation" for the trespass committed.

In *Stark v. Pennsylvania Coal Co.*, 241 Pa. 597, 88 A. 770 (1913), the court held that the royalty rate should be used as the measure of damages[1] where the defendant's tortious conduct was an innocent mistake. In *Stark*, when the coal was mined, the defendant was not aware that it was working upon the land of another. It was mistaken and the mistake was an innocent one.

In *Matthews v. Rush*, 262 Pa. 524, 105 A. 817 (1919), the court referred to *Trustees of Kingston* (No.1), supra, as holding that the measure of damages was the value of the coal in place if the taking was not tortious.

---

1. Rather than a higher rate used by a Referee appointed to assess damages.

██ The findings of fact made by the lower court in the case before us, particularly Nos. 1 to 8, do not demonstrate that defendant's taking of the coal was not tortious, nor that defendant's mistake was an innocent one. To the contrary, the record establishes that the coal company proceeded to mine the coal knowing that there were two claimants of ownership, over the repeated protests of appellant, without searching the title or making proper surveys. Thus Benjamin ran the risk, if the coal was not in fact owned by Ferraro, of paying to appellant just compensation.

██ In order to determine what constitutes just compensation, a court must consider the following:

1. The value of the coal in place, as measured by the prevailing royalty rate, if that is the best available measure;

2. Detention money;

3. An amount, reasonable in all the circumstances, to compensate the plaintiff for defendant's taking without consent some of the incidents of ownership of the coal (including, the right to determine when to develop or to sell the coal, with whom to deal, and at what rate and under what specific terms). This latter is an intangible item to be proved by the best available evidence, including proof of the defendant's profits from its unauthorized mining. There is no requirement to establish the value of this item to an absolute or mathematical certainty, but the evidence should go beyond mere speculation or conjecture. *Freedom Oil Works Co. v. Williams*, 302 Pa. 51, 56, 152 A.2d 741 (1930).

██ In the case before us, we do not hold that all of Benjamin's profits from the venture must necessarily be awarded to appellant. The amount of such profit, however, is a circumstance to be considered by the lower court in determining the amount of just compensation.

Reversed and remanded for further proceedings consistent with this opinion.