604 P.2d 610

**Richard S. BERRY and Jean D. Berry, husband and wife, Appellants,**

v.

**Virginia McLEOD, Personal Representative of the Estate of Richard L. McLeod, Deceased, Appellee.**

**STEWART TITLE AND TRUST OF PHOENIX, an Arizona Corporation, Cross-Appellant,**

v.

**Richard S. BERRY and Jean D. Berry, husband and wife; and Virginia McLeod, Personal Representative of the Estate of Richard L. McLeod, Deceased, Cross-Appellees.**

No. 14161.

Supreme Court of Arizona, In Division.

Nov. 28, 1979.

Richard S. Berry and Jean D. Berry, in pro. per., appellants and cross-appellees.

Mariscal, Weeks, McIntyre & Friedlander by Philip Weeks, Phoenix, for appellee and cross-appellee McLeod.

Lewis & Roca by Douglas L. Irish and Paul G. Ulrich, Phoenix, for cross-appellant Stewart Title and Trust of Phoenix.

HOLOHAN, Justice.

This appeal arises from the successful efforts of Virginia McLeod, personal representative of the estate of Richard McLeod, deceased, to set aside the sales agreements

in two separate but related real estate transactions. Although a number of parties were joined in the action in the trial court, only two of the parties, Richard Berry and his wife and Stewart Title and Trust of Phoenix, have appealed. We took jurisdiction of the appeal pursuant to former Supreme Court Rule 47(e)(5), now Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

The essential facts of the claim against Berry are that Richard S. Berry entered into a transaction to purchase a residence owned by Richard McLeod. The purchase price was shown as $75,000.

An escrow was established at Stewart Title & Trust of Phoenix. The escrow instructions recited the purchase price and terms. The escrow instructions showed that a $20,000 down payment was to be paid direct and outside of escrow. The balance of the purchase price was to be paid by a new mortgage to be obtained by Berry. Richard McLeod died before the escrow closed. As personal representative of the McLeod estate, Virginia McLeod filed suit to cancel the sale. After three amendments, the suit alleged in part that Richard McLeod was incompetent as a result of alcoholism, that he acted under undue influence of certain parties to the suit, that there existed a conspiracy to defraud Richard McLeod of his property, that the $20,000 down payment, allegedly paid by check, was never paid and that in addition a purported assignment by McLeod of $28,500 from the proceeds of the escrow to be paid to the law firm of Berry and Herrick was either a forgery or was executed by McLeod without consideration or as a result of undue influence. The relief sought was that the court declare the escrow and assignment void, declare that Berry never paid the $20,000 down payment, enjoin the closing of escrow, and enter judgment for all damages including exemplary damages.

Berry filed a counterclaim for the enforcement of the sale or in the alternative $20,000 allegedly paid outside of escrow. After hearing the evidence the jury found for McLeod on all the issues and returned a verdict for $25,000 as exemplary damages. The trial court entered judgment in accordance with the verdict of the jury.

Berry raises one issue on appeal: In a rescission action can punitive damages be awarded?

Berry characterizes McLeod's action as one for rescission and argues that a finding of actual monetary damages is necessary to support a punitive damage award. As no actual damages were awarded here, he argues that the $25,000 punitive damage award cannot stand. McLeod asserts that the action was for declaratory relief. Both parties agree that *Starkovich v. Noye*, 111 Ariz. 347, 529 P.2d 698 (1974) controls but their interpretations of that case differ radically.

In *Starkovich, supra*, the plaintiff sought reformation of a contract and was awarded punitive damages for fraud. On appeal the defendants argued that reformation cannot be construed as compensatory damages sufficient to support an award of punitive damages. This court disagreed, emphasizing that the distinction between law and equity had been abolished for some time and that courts should award complete relief. We held that the compensatory damage requirement necessary to support an award of punitive damages is satisfied by either pecuniary loss or "*the alteration of one's position to his prejudice*," 111 Ariz. at 351, 529 P.2d at 702 (emphasis in original). The plaintiff in *Starkovich* was successful in reforming an agreement fraudulently changed to provide a 90–10 percentage ownership. The agreement was reformed to provide the plaintiff with a 50-percent ownership in the property covered by the agreement.

The import of *Starkovich* was not altered by our holding in *Hubbard v. Superior Court*, 111 Ariz. 585, 535 P.2d 1302 (1975). In *Hubbard* the plaintiff's complaint consisted of two counts, the first prayed for rescission, the second requested punitive damages. We struck the second count, holding that in a rescission action an election of remedies is required.

In the instant case, the complaint alleged that Berry had fraudulently induced McLeod to contract to sell his house. The action sought primarily to avoid the house transaction despite the fact that the complaint was couched in terms requesting the court to "declare" the contract "null and void." This is rescission. *See* Dobbs, *Remedies* § 4.3 at p. 254. The trial court's judgment bears this out. It reads in pertinent part:

"[A]ll contracts between the said RICHARD L. McLEOD and RICHARD S. BERRY and JEAN D. BERRY pertaining to said real property and improvements located thereon be and are hereby rescinded and cancelled."

Although ordinarily in a rescission action punitive damages are not properly awarded, *see Hubbard, supra,* this case involves more than just rescission. Rescission alone would have required the McLeod estate to "repay" the $20,000 that Berry alleged he had paid outside of escrow. The jury found that the $20,000 had not been paid, and the evidence clearly supports this finding.

There was also the matter of the $28,500 purported assignments to Berry's law firm. Richard McLeod had signed a supplemental escrow instruction that $28,500 was to be paid out of the proceeds from the sale of the house to the law firm. There was in fact no such amount due to the law firm. The trial court granted a directed verdict on that issue and entered judgment declaring the assignments void and cancelled.

■ Thus, in total, by virtue of the judgment entered below the plaintiff was successful in setting aside the $28,500 assignments and defeating the $20,000 claim by Berry that the earnest money had been paid. The estate of McLeod was successful in preserving $48,500 from the fraudulent claims of others. This is sufficient to meet the *Starkovich* predicate for an award of punitive damages. We hold that punitive damages were properly awarded.

■ Stewart Title appeals an award against it on a cross claim by Berry for $6,875, Berry's financing cost for the McLeod-Berry house transaction.

As noted earlier, at a time when the escrow appeared otherwise ready to close, Richard McLeod died. The Berrys demanded the escrow be closed. Representatives of the estate of McLeod asked for a few days' delay to permit them to investigate. Berry acceded to an eight-day delay during which the original complaint in this suit was filed. Stewart Title then interpleaded pursuant to paragraph 7 of the escrow agreement. Paragraph 7 reads:

"[Seller and Buyer] [a]uthorize Escrow Agent, in the event *any* demand is made upon it concerning these instructions or the escrow, at its election, to hold any money and documents deposited hereunder until an action shall be brought in a court of competent jurisdiction to determine the rights of Seller and Buyer or to interplead said parties by an action brought in any such court. *Deposit* by Escrow Agent of said documents and funds, after deducting therefrom its charges and its expenses and attorney's fees incurred in connection with any such court action, *shall relieve Escrow Agent of all further liability and responsibility.*" (Emphasis supplied.)

Berry asserted at trial that because McLeod's original complaint sought a constructive trust, Stewart Title should have closed the escrow despite the suit, as a constructive trust could not be imposed on Berry unless he had legal title. Therefore, according to Berry, Stewart Title improperly interpled and should bear the cost of his financing in the amount of $6,875.

The filing of a lawsuit certainly constitutes "any demand" within the meaning of paragraph 7. Once a demand had been made, paragraph 7 allowed Stewart Title, at its election, to either hold the documents and money or to interplead. The plain language of the agreement does not restrict Stewart Title's course of action based on the theory of the lawsuit.

Stewart Title acted in accordance with the escrow agreement, and Berry was not entitled to judgment. The trial court should have entered judgment in favor of Stewart Title.

Stewart Title also appeals the trial court's granting of a new trial on the McLeod claim involving the sale of 320 acres. The facts necessary to resolve the questions presented come to us in the form of depositions and a narrative statement filed pursuant to Rule 75(c), Rules of Civil Procedure, 16 A.R.S. (Now Rule 11(c), Rules of Civil Appellate Procedure, 17A A.R.S.).

Stewart Title was the escrow agent for the 320-acre transaction. There were two sales involved involving so-called "back-to-back escrows;" that is, McLeod was to convey his property for $160,000 to W. R. Ranches who had contracted to convey the land upon close of the first escrow to W. O. Stewart for $320,000. McLeod was unaware of the second escrow and sale of his land by W. R. Ranches to a third party.

It was agreed by all parties that the several jury verdicts relating to the 320-acre transaction were hopelessly inconsistent. McLeod made a motion for a mistrial directed to that portion of the case dealing with the 320-acre transaction. Stewart Title objected, but the trial court granted the motion and ordered a new trial. Stewart Title asserts that the new trial order was error for a number of reasons, only two of which merit discussion, and they are:

(1) that McLeod, who requested the new trial, waived her right to complain about inconsistency or ambiguity in the jury verdicts by not requesting that the verdicts be returned to the jury for further deliberation pursuant to Rule 49(c), Rules of Civil Procedure, 16 A.R.S.;

(2) that there was insufficient evidence to justify submitting McLeod's claim against Stewart Title to the jury because an escrow agent's duty is a limited fiduciary duty and no breach was proven.

■ Stewart Title asserts on appeal that McLeod waived her right to a new trial on the 320-acre transaction by not requesting that the court order the jury to redeliberate, pursuant to Rule 49(c), Rules of Civil Procedure. There is no merit to this position. It was agreed by counsel for all parties that the verdicts were hopelessly inconsistent. McLeod argued that returning the verdicts to the jury would be futile. The jury had deliberated for two weeks. Up to the last day they had reported a deadlock on five issues. After that report Stewart Title had moved for a mistrial before the eventual return of the verdicts. When the verdicts were returned, counsel for Stewart Title agreed that the verdicts were so inconsistent that they probably could not be corrected by the jury. Counsel acknowledged that mistrial was an appropriate remedy. Reporter's Transcript, Sept. 10, pages 13, 14 & 40. Counsel for Stewart Title advised the trial court that a formal motion for judgment n.o.v. would be filed, renewing the motion for a directed verdict made by Stewart Title at the close of all the evidence.

The statements of counsel to the trial court suggested consent, or at least no objection, to not resubmitting the verdicts to the jury. *See Fridena v. Palmer,* 107 Ariz. 455, 489 P.2d 265 (1971); *McClennen v. McClennen,* 11 Ariz.App. 395, 464 P.2d 982 (1970); *Board of Trustees Eloy Elementary School District v. McEwen,* 6 Ariz.App. 148, 430 P.2d 727 (1967); *Garrett v. Holmes Tuttle Broadway Ford,* 5 Ariz.App. 388, 427 P.2d 369 (1967). Under the circumstances Stewart Title cannot claim error by the trial court in not sending the verdicts back to the jury for correction pursuant to Rule 49(c).

Stewart Title, lastly, argues that a new trial is not justified by the evidence, and, in fact, its motion for a directed verdict at the close of all the evidence should have been granted because McLeod failed to prove any breach of duty by Stewart Title.

Two theories of liability were presented by McLeod against Stewart Title. The first theory was that Stewart Title was negligent in the administration of the escrow for the 320 acres sale. The second theory of liability was that Stewart Title violated its fiduciary duty owed to McLeod as escrow agent for the 320 acres sale.

Although the escrow business is a regulated industry (A.R.S. § 6–801 *et seq.*) subject to regulation by superintendent of banks (A.R.S. § 6–802), there is nothing

specific in the applicable statutes nor in the regulations (A.C.R.R. R4–4–701 to 706) which addresses the issue of an escrow agent's duty under the facts of this case. McLeod's reference to A.R.S. § 6–817(A)(5), which provides for the revocation of the escrow license of an agent who conceals any essential or material fact from any person in the course of the escrow business, is not enlightening. The point remains to define what is "essential" or "material" in an escrow transaction.

Stewart Title argues that its duty to disclose is limited to the material necessary to carry out the instructions which the parties to the escrow have signed. Anything in a second escrow involving the same land but not all of the same parties, is not material or essential to the first or any other escrow unless the parties by their escrow agreement make it so. In support of its position Stewart Title relies on a line of authority from California cases. Beginning in 1934 the California Supreme Court in *Blackburn v. McCoy*, 1 Cal.App.2d 648, 37 P.2d 153 (1934) announced the rule that an escrow agent was a limited agent, and the escrow instructions constituted the full measure of the obligations assumed by the escrow agent and owing to the parties. The escrow agent was not required to disclose anything not included in the escrow instructions. *See also Gordon v. D & G Escrow Corp.*, 48 Cal.App.3d 616, 122 Cal.Rptr. 150 (1975); *Majewsky v. Empire Construction Co.*, 2 Cal.3d 478, 85 Cal.Rptr. 819, 467 P.2d 547 (1970); *Lee v. Title Insurance and Trust Co.*, 264 Cal.App.2d 160, 70 Cal.Rptr. 378 (1968); *C. B. Cunningham v. Security Title Insurance Co.*, 241 Cal.App.2d 626, 50 Cal.Rptr. 724 (1966); *Mefford v. Security Title Insurance Co.*, 199 Cal.App.2d 578, 18 Cal.Rptr. 877 (1962).

Stewart Title especially relies on *Lee v. Title Insurance and Trust Co., supra*. The question presented in *Lee* was whether an escrow agent is under a fiduciary duty to go beyond the escrow instruction and to notify each party to the escrow of any suspicious fact or circumstance which has come to the agent's attention before or during the life of the escrow which could conceivably affect a party to the escrow even though the fact or circumstance is not related to the agent's specific escrow instructions. The California Court of Appeals in *Lee* answered the question negatively, noting:

"In fact, under the proposed rule, once an escrow holder received information (from whatever source) he would be forced to decide independently whether to believe the information and disclose it or disbelieve it and conceal his knowledge. If he concealed his knowledge he would risk suit. If he discloses and the information is inaccurate, he may be sued by all parties to the escrow for interfering with their contract. [Footnote omitted.] Establishing a rule which would create such a dilemma and subject . . . the escrow holder to a high risk of litigation would damage a valuable business procedure. Manifestly, appellants' contention, if adopted by judicial fiat, would effectively discourage a reasonable and prudent man or company from acting as an escrow holder and would ultimately defeat the very purpose for which escrows originated." 70 Cal.Rptr. at 380.

McLeod contends that the California rule should not be adopted in Arizona because our cases establish that the relationship of the escrow agent to the parties to the escrow is one of trust and confidence. *Tucson Title Insurance Co. v. D'Ascoli*, 94 Ariz. 230, 383 P.2d 119 (1963); *Malta v. Phoenix Title & Trust Co.*, 76 Ariz. 116, 259 P.2d 554 (1953). In its fiduciary capacity the escrow agent must conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence. *Tucson Title Insurance Co. v. D'Ascoli, supra; Buffington v. Title Insurance Co. of Minnesota*, 26 Ariz.App. 97, 546 P.2d 366 (1976).

The several Arizona cases cited by McLeod do not rule on the issue presented in this case. In fact *Malta v. Phoenix Title & Trust Co., supra*, it may be argued, gives some support to the California rule in that *Malta* speaks in terms of an escrow agent being required to act in strict accordance with the terms of the escrow agreement

and being liable only when there is a departure from those terms.

The California rule was approved and followed in *Gurley v. Bank of Huntsville*, 349 So.2d 43 (Ala.1977). The Alabama Supreme Court stated that there was no duty to disclose information received by an escrow agent unless such duty was required by the terms of the escrow agreement.

There appears to be a different rule, however, when the escrow agent is an active participant in defrauding one of the parties to the escrow. In such instances it has been held that the escrow agent had a duty to disclose the situation. *Bardach v. Chain Bakers, Inc.*, 265 App.Div. 24, 37 N.Y.S.2d 584 (1942), *affirmed*, 290 N.Y. 813, 50 N.E.2d 233 (1943); *United Homes, Inc. v. Moss*, 154 So.2d 351 (Fla.App.1963).

In the case at issue McLeod did not contend in the trial court that Stewart Title was an active participant in any alleged fraudulent scheme. McLeod did contend, however, that agents of Stewart Title knew that Parent and Jones were involved in a scheme to defraud the late Richard McLeod. The silence of Stewart Title employees in a real sense, contends McLeod, assisted in the perpetration of the fraud. McLeod argues that an escrow company may not shut its eyes to fraud which it knows is occurring even if the escrow instructions do not specifically call for such disclosure.

The California rule on disclosure by an escrow agent is sound up to a point. Absent fraud, the activities of real estate investors and speculators in buying and selling real property is a legitimate activity. The escrow agent has no duty to regulate the transactions so that each party receives a fair price for his property. The escrow company is not a guardian for the uninitiated. On the other hand, the escrow agent should not assist the perpetration of fraud by silence when disclosure could prevent the accomplishment of the fraud.

■ Generally, there is no duty to disclose information received by an escrow agent unless such a duty is required by the terms of the agreement, but we hold that

there is an exception to the foregoing rule when the escrow agent *knows* that a fraud is being committed on a party to an escrow and the failure of the escrow agent to disclose the information of the fraud will assist in accomplishing the fraud; under such conditions the escrow agent has a duty to disclose the facts actually known.

■ We agree that an escrow agent has no duty to look for fraud, but, if knowledge comes to the escrow agent that there is a fraud, there is a duty to disclose such information to the parties to the escrow.

■ In the case at issue Stewart Title denies that there is any evidence that its employees knew that McLeod was being defrauded. Stewart Title contends that the most that the evidence shows is that the land being sold by McLeod to the corporation of Jones and Parent was being sold for a higher and better price to a W. O. Stewart. The contention is made that this evidence merely shows that McLeod wasn't making as much as he could on the sale of his land.

McLeod argues that Stewart Title's agent, Noll, was aware that Jones and Parent were brokers acting for McLeod, and that these brokers, using the device of a corporation, were buying their principal's land at a lower price so that they could sell it at a higher price and make a secret profit for themselves.

The evidence in support of McLeod's position is in serious dispute, but it is sufficient to resist the granting of a directed verdict on the breach of fiduciary duty thereof. *See Brand v. J. H. Rose Trucking Co.*, 102 Ariz. 201, 427 P.2d 519 (1967).

The trial court should have directed a verdict on the negligence theory. We have held that there is no duty by the escrow agent to look for fraud. Any liability in this area must be based on evidence that the escrow agent had actual knowledge of the fraud and failed to disclose the known information to the parties.

The judgment in favor of McLeod and against Berry for $25,000 exemplary damages is affirmed. The judgment in favor of

Berry and against Stewart Title for $6,875 is reversed with directions to enter judgment in favor of Stewart Title. The order granting a new trial on the claim of McLeod against Stewart Title is affirmed on the issue of breach of fiduciary duty but reversed on the negligence theory. The matter is remanded to the trial court for further proceedings consistent with this opinion.

CAMERON, C. J., and STRUCKMEYER, V. C. J., concur.