## Korman Corporation v. Franklin Town Corporation

*Barry E. Ungar,* for plaintiff.
*Andrew Woltzman Drucker,* for defendants.
*Richard Z. Freeman, Jr.,* for defendants.

TAKIFF, *J.,* June 20, 1984—This action in equity was commenced by plaintiff, a minority shareholder of Franklin Town Corporation, in March, 1983. In its amended complaint, plaintiff alleges that defendants, majority shareholders of Franklin Town, have exercised their control and domination over the affairs of the corporation in pursuit of their own selfish interest and gain, thereby breaching the fiduciary duties which they owe both to the corporation and to plaintiff directly as a minority stockholder. Defendants filed extensive preliminary objections to plaintiff's amended complaint to

which plaintiff appropriately responded. Plaintiff also filed preliminary objections of its own seeking to strike a portion of defendants' preliminary objections.[1] The matters were fully briefed and oral argument was held before this court on September 2, 1983. Shortly thereafter, counsel for the respective parties advised the court that continued efforts were being exerted by all involved to seek an amicable resolution of this dispute. We, accordingly, notified counsel that our consideration of the open motions would be deferred pending the completion of settlement discussions. We have recently been advised that the parties were unable to amicably resolve their differences. Consequently, the previously deferred matters are now ripe for adjudication.

## PLAINTIFF'S PRELIMINARY OBJECTIONS

Plaintiff's preliminary objections are meritorious and can be disposed of easily. In paragraphs 19-21 of their preliminary objections, defendants raise the affirmative defense of estoppel to plaintiff's claims. Plaintiff correctly asserts, however, that this defense, as all affirmative defenses, must be raised in a responsive pleading under the heading "New Matter" and cannot appropriately be asserted by way of preliminary objections. Pa.R.C.P. 1030. See 2 Goodrich-Amram 2d § 1030:1.2 at 287-88 (1976); McKeever v. Mercaldo, 3 D.&C. 2d 188, 191 (1954); Ditkosky v. Schreiber Trucking Co., 82 D.&C. 385, 388-89 (1951). Accordingly, we sustain plaintiffs' preliminary objections in the nature of a motion to strike and strike paragraphs 19-21 of defendants' preliminary objections.

---

1. Plaintiff's preliminary objections address the narrow issue of whether the affirmative defense of estoppel is an appropriate matter to be raised by way of preliminary objection. See our discussion infra.

## DEFENDANTS' PRELIMINARY OBJECTIONS

Five of defendants' preliminary objections are in the nature of a demurrer to the various counts of plaintiff's amended complaint.[2] A demurrer is a severe dispository procedure which should be sustained only in the clearest of cases and only after the moving party has satisfied certain stringent standards. A demurrer admits as true all relevant facts sufficiently pleaded in the complaint and all inferences fairly and reasonably deducible therefrom. Gekas v. Shapp, 469 Pa. 1, 364 A.2d 691 (1976); Buchanan v. Brentwood Federal Savings and Loan Association, 457 Pa. 135, 320 A.2d 117 (1974); Vitteck v. Washington Broadcasting Co., 256 Pa. Super. 427, 389 A.2d 1197 (1978). In passing upon a demurrer, the court cannot consider factual matters collateral to the complaint but must limit itself only to such matters as appear therein. International Union of Operating Engineers v. Linesville Constr. Co., 457 Pa. 220, 322 A.2d 353 (1974); Muia v. Fazzini, 416 Pa. 377, 205 A.2d 856 (1965). A demurrer will be sustained only if "upon the facts averred, the law says with certainty that no recovery is permitted." Clevenstein v. Rizzuto, 439 Pa. 317, 401, 266 A.2d 623, 625 (1970). See also King v. United States Steel Corp., 432 Pa. 140, 143-44, 247 A.2d 563, 565 (1968). All doubts, if any exist, should be resolved in favor of overruling the demurrer. With these principles in mind, we now turn to an examination of the factual averments found in plaintiff's complaint.

---

2. As more fully discussed infra, defendants also argue that the instant action is barred by the equitable doctrine of laches, Preliminary Objection no. 7, or, in the alternative, that plaintiff should be required to file a more specific pleading. Preliminary Objection no. 6.

## FACTS

Defendant Franklin Town Corporation is a Pennsylvania corporation organized on August 18, 1972 and engaged in the development and management of real estate in center city Philadelphia. Complaint paragraph 2. Defendants SmithKline Beckman Corporation, Adwin Realty Company and Butcher & Singer, Inc. are majority shareholders of Franklin Town and allegedly exercise complete control over its corporate affairs. Complaint paragraph 9. Plaintiff, The Korman Corporation, a minority shareholder of Franklin Town,[3] claims that the majority shareholders have conducted the affairs of Franklin Town in a manner calculated to further their own selfish interests and gain, without regard and in violation of the rights of the minority shareholders. Complaint para. 10. Specifically, plaintiff alleges that defendants, by virtue of their control and domination over the affairs of Franklin Town, have contrived a plan to unlawfully increase their own interest and dilute plaintiff's ownership interest in the corporation by, inter alia, increasing Franklin Town's outstanding stock over fourfold and issuing the additional shares of stock to themselves for no consideration.[4] Complaint paragraph 11. Plaintiff further alleges that defendants have

---

3. The Articles of Incorporation of Franklin Town authorize the issuance of 100,000 shares of common stock at a par value of $.10. Complaint paragraph 6. To date, 96,301 shares have been issued, of which plaintiff owns two percent.

4. As a result of this plan, to be reflected in the corporate books as a $40,000 ($.10 share) transfer from the capital surplus account to stated capital, Complaint para. 11(b), plaintiff's ownership interest in Franklin Town will be diluted by over 80 percent, from two percent to less than four tenths percent. Complaint paragraph 15.

breached their fiduciary duties to the minority shareholders and to the corporation itself by:

"(a) causing Franklin Town to engage in transactions with other entities in which the majority shareholders have an interest to the detriment of the interests of minority shareholders and of Franklin Town; [and]

(b) failing to disclose to Korman information material to its ownership interest, and failing to provide Korman with information which was necessary to a full understanding of proposed corporate action including, inter alia, the action proposed in the Notice of Annual Stockholders Meeting . . . . Complaint para. 12.

In Count I of the amended complaint, plaintiff asserts a direct claim against the majority shareholders for violation of their fiduciary duties owed to it as a minority shareholder and requests the following relief: a declaration that the issuance to defendants of the additional 400,000 shares of Franklin Town is unlawful or, in the alternative, if such shares have been issued, an order directing defendants to return such shares to Franklin Town for cancellation; an injunction prohibiting the defendants from acquiring any additional stock of Franklin Town except on payment of such consideration as shall be approved by this court; an order requiring the defendants to account for all gains and benefits which they obtained as a result of self-dealing and diversion of corporate opportunities; and an award of damages, including punitive damages and attorneys' fees. In Count II, plaintiff, individually, seeks to enjoin Franklin Town from permitting itself to be used in the manner proposed by the defendants, and in Count III, plaintiff asserts a claim derivatively on behalf of Franklin Town and requests relief identical to that which is sought in Count I.

## PROPRIETY OF PRIVATE CAUSE OF ACTION

In their preliminary objections, defendants initially assert that Count I of plaintiff's amended complaint should be dismissed since, as a matter of law, claims against majority shareholders for breach of fiduciary duty must be brought derivatively on behalf of the corporation and may not be raised in a private action by a minority shareholder. Defendants contend that the injury alleged here is not personal to plaintiff, but rather corporate in nature, and, therefore, redress for the perceived wrong must be brought in the name of the corporation, the real party in interest, and not by plaintiff who, at most, suffers only indirectly as a result of the allegedly wrongful conduct. Under these circumstances, defendants argue, the law is clear that a private action may not be maintained and, therefore, it is requested that we sustain the demurrer and dismiss Count I of the complaint. After review of the relevant authorities and the arguments ably briefed by counsel, we conclude that plaintiff has sufficiently set forth a direct cause of action in Count I of its complaint and, accordingly, we overrule defendants' initial preliminary objection.

As a preliminary matter, it is helpful to examine the special duties and obligations which the law has placed upon the defendants by virtue of their status as majority stockholders.

Both the directors of a corporation and its majority shareholders stand as fiduciaries toward the corporation and the minority shareholders. As fiduciaries, they are bound to act in the interests of the corporation and the remaining shareholders and are prohibited from pursuing any narrow self-interest in dealing with the property of the minority shareholders. Box v. Northrop Corp. 459 F. Supp. 540

(S.D.N.Y. 1978). The fiduciary obligation owed by the majority to the remaining shareholders is one of utmost good faith and loyalty. See Donahue v. Rodd Electrotype Co., 328 N.E. 2d 505 (Mass. 1975); Jones v. H. F. Ahmanson & Co., 1 Cal. 3d 93, 81 Cal. Rptr. 592, 460 P.2d 464 (1969). As the United States Supreme Court noted in Pepper v. Litton, 308 U.S. 295 (1939):

"He who is in such a fiduciary position cannot serve himself first and his cestuis second. He cannot manipulate the affairs of his corporation to their detriment and in disregard of the standards of common decency and honesty. He cannot by the intervention of a corporate entity violate the ancient precept against serving two masters. He cannot by the use of the corporate device avail himself of privileges normally permitted outsiders in a race of creditors. He cannot utilize his inside information and his strategic position for his own preferment. He cannot violate rules of fair play by doing indirectly through the corporation what he could not do directly. He cannot use his power for his personal advantage and to the detriment of the stockholders and creditors no matter how absolute in terms that power may be and no matter how meticulous he is to satisfy technical requirements. For that power is at all times subject to the equitable limitation that it may not be exercised for the aggrandizement, preference, or advantage of the fiduciary to the exclusion or detriment of the cestuis. Where there is a violation of those principles, equity will undo the wrong or intervene to prevent its consummation."

Id. at 311 (footnote omitted). Thus, a majority shareholder must at all times exercise good faith, care and diligence to conserve the property of the corporation and to protect the interests of the minority shareholders. Weisbecker v. Hosiery Patents,

Inc., 356 Pa. 244, 252, 51 A.2d 811, 814 (1947). See also Dower v. Mosser Industries, Inc., 648 F.2d 183, 188 (3d Cir. 1981); Northway, Inc. v. T.S.C. Industries, Inc., 512 F.2d 324, 339 (7th Cir. 1975), revd. on other grounds, 426 U.S. 438 (1976); In re Reading Company, 551 F. Supp. 1205 (E.D., Pa. 1982), rev'd. on other grounds, 711 F.2d 509 (1983); Singer v. Magnavox Co., 380 A.2d 969, 976 (Del. 1977). The Pennsylvania Supreme Court recently reiterated these long-standing requirements in Ferber v. American Lamp Corp., 503 Pa. 489, 469 A.2d 1046 (1983) wherein the court stated:

"It has long been recognized that majority shareholders have a duty to protect the interests of the minority. This court has stated that "majority stockholders occupy a quasi-fiduciary relation toward the minority which prevents them from using their power in such a way as to exclude the minority *from their proper share of the benefits accruing from the enterprise.*" Hornsby v. Lohmeyer, 364 Pa. 271, 275, 72 A.2d 294, 298 (1950) (Emphasis supplied). This does not mean, of course, that majority shareholders may never act in their own interest, but when they do act in their own interest, it must be also in the best interest of all shareholders and the corporation." Weisbecker v. Hosiery Wide Patents, Inc. 356 Pa. 244, 251, 258, 51 A.2d 811, 814, 817 (1947). Id. at 493, 469 A.2d at 1050. Obviously, under appropriate circumstances, breach of this fiduciary duty may give rise to both direct and derivative causes of action.

Defendants do not dispute that they owe certain duties to plaintiff and the other minority shareholders of Franklin Town. Defendants contend, however, that the gravamen of the instant action is injury to the entire corporate body, not to plaintiff directly,

and, therefore, redress must be sought by the corporation in a derivative action. We disagree.

The cases upon which defendants rely, although correctly decided on the facts presented, are inapposite to the matter presently before us. In Beeber v. Wilson, 285 Pa. 312, 131 A.854 (1926), plaintiff, a minority shareholder, brought suit in his own name against the majority shareholders claiming that the majority appropriated certain sums of money which should have been paid to the corporation. There, the injury, and thus, the cause of action, clearly belonged exclusively to the corporation and the court, therefore, correctly concluded that the action could not be maintained by plaintiff in an individual capacity. In affirming judgment in favor of defendant, the court reasoned:

"To permit each individual stockholder to sue for his supposed proportion of corporate assets would be intolerable. Only by payment to the corporation itself can creditors be fully protected. If every minority stockholder could sue in his own name for his supposed proportionate share of a fund alleged to be illegally withheld from the corporation, an innumerable number of suits might result (in the case of the Pennsylvania Railroad Company, for instance, if all such shareholders sued separately, there would be in the neighborhood of a seventh of a million of such actions), some of which might be won and others lost by the respective shareholders. When plaintiff became a stockholder he knew, for he was bound to know, that his rights, as such, would have to be worked out through the corporation, and not in his individual name." Id. at 316, 131 A. at 855. Similarly, in Burdon v. Erskine, 264 Pa. Super. 584, 401 A.2d 369 (1979), the Superior Court affirmed the dismissal of plaintiff shareholder's direct cause of action against corporate directors in which plain-

tiff claimed, inter alia, that the directors had breached their fiduciary duties to the corporation by approving unreasonable and excessive employment contracts for themselves. Again, the injury alleged was indisputably to the corporation, not to plaintiff, and thus "insufficient to give rise to a direct cause of action by the stockholder." Id. at 586, 401 A.2d at 370. See also Willis v. Dillsburg Grain & Milling Co., 490 F. Supp. 46 (M.D., Pa. 1980) (claim that majority shareholder and director of corporation breached his fiduciary duties by, inter alia, refusing to declare and pay a reasonable dividend is properly raised in a derivative action brought on behalf of the corporation, not in a private action by the plaintiff); Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc., 73 F.R.D. 420 (E.D., Pa. 1977), aff'd mem., 586 F.2d 834 (3d Cir. 1978) (where the alleged wrong is primarily against the corporation, redress for that wrong must be sought by the corporation in the form of a derivative action).

Unquestionably, as the aforementioned cases clearly demonstrate, where the act or acts for which complaint is made injure only the corporation, without "directly" affecting its shareholders individually, relief for the harm done is awarded to the corporation and the appropriate manner in which a stockholder may seek redress, assuming, of course, that the corporation is unwilling to institute suit on its own behalf, is through a derivative action. Davis v. United States Gypsum Co., 451 F.2d 659 (3d Cir. 1971); Goodman v. DeAzoulay, 554 F. Supp. 1029 (E.D., Pa. 1983); Continental Group, Inc. v. Justice, 536 F. Supp. 658 (D. Del. 1982); In re Penn Central Securities Litigation, 347 F. Supp. 1324 (E.D., Pa. 1972). However, where, as here, a shareholder alleges and can establish an injury, personal to himself and apart from injury to the corporation, he may

bring suit in his own name. Goodman, supra at 1038; Empire Life Insurance Co. of America v. Valdak Corp., 468 F.2d 330 (5th Cir. 1972); Fishkin v. Hi-Acres, Inc., 462 Pa. 309, 341 A.2d 95 (1975); Vierling v. Baxter, 293 Pa. 52, 141 A.2d 728 (1928). It is hornbook law that where the conduct alleged constitutes not only a wrong against the corporation, but also a violation of duties owed directly to a stockholder, whether such duties arise from contract or otherwise, a direct, personal cause of action may be maintained, see White v. First National Bank of Pittsburgh, 252 Pa. 205, 97 Atl. 403 (1916), either in conjunction with or in lieu of a claim asserted derivatively on behalf of the corporation. See, e.g., Weston v. Reading Company, 41 D.&C.2d 231 (1967); Wolf v. Young Supply Co. 19 D.&C.2d 404 (1959).

In Count I of its complaint, plaintiff alleges that the majority shareholders have caused or will cause Franklin Town to issue an additional 400,000 shares of stock to themselves for no consideration, thereby substantially diluting plaintiff's ownership interest and voting rights in the corporation. Accepting, as we presently must, the accuracy of this averment, is it not clear that plaintiff will suffer significant "direct" injury, separate and apart from whatever injury may be suffered by the entire corporate body, as a result of this proposed action — action which, if proven, would constitute a breach of the fiduciary duties owed by defendants to plaintiff as a minority shareholder? Granted, the corporation itself will also suffer as a result of defendants allegedly wrongful conduct. But this does not preclude plaintiff from seeking redress in his own right for breach of duties owed directly to it. Defendants herein have a duty to assiduously protect the interest of the minority shareholders of Franklin Town

and, thus, they may not use their power in such a manner as to exclude plaintiff or the other minority stockholders from their "proper share of the benefits accruing from the enterprise." Ferber, supra. This is the gravamen of Count I of the complaint. A more direct injury this court cannot envision. Accordingly, we overrule defendants' initial preliminary objection.

## CAUSE OF ACTION AGAINST FRANKLIN TOWN

It is asserted by defendants that Count II of the amended complaint should be dismissed for failure to state a cause of action against defendant Franklin Town Corporation. We find no merit to this argument.

A corporation may issue its capital stock only upon receipt of consideration — no stock may issue as a mere gratuity. This requirement is embodied in section 603A of the Business Corporation Law, Pa. Stat. Ann. Tit. 15, §1603A (Purdon's 1967), which provides: "Shares of a business corporation shall not be issued except for money, labor done, or money or property actually received." Plaintiff alleges here that Franklin Town has or will issue approximately 400,000 shares of its stock to the defendant majority shareholders for no consideration, clearly in violation of the above quoted section of the Business Corporation Law. Accordingly, in Count II of its complaint, plaintiff quite appropriately seeks declaratory and injunctive relief against the corporation to prevent or rectify this alleged statutory violation. Clearly, plaintiff has stated a valid cause of action against Franklin Town and this court is empowered to fashion appropriate relief. As one learned commentator has observed: "For a corporation to issue its stock as

a gratuity violates the rights of existing sharehold-
ers who do not consent [and who] may sue to enjoin
the issuance of the stock, or cancel it if it has been
issued." 11 Fletcher's Cyclopedia Corporations,
§5202 at 374. Defendants' preliminary objection to
Count II of the amended complaint is, therefore,
overruled.

## PLAINTIFF'S DERIVATIVE ACTION

Movants next contend that Count III of the
amended complaint, brought by plaintiff in a deriva-
tive capacity on behalf of the corporation, must be
dismissed because "(a) [plaintiff] has failed to com-
ply with the procedural requirements of Pa. R.C.P.
1506, (b) [plaintiff] is in a conflict-of-interest pos-
ture, and (c) the claims [plaintiff] is attempting to
assert are barred by the business judgment rule."
Defendants' memorandum of law at 9. We will ad-
dress each argument seriatim.

## (A) PROCEDURAL REQUIREMENTS OF
## PA. R.C.P. 1506

Generally, before a shareholder may institute and
maintain litigation that rightfully belongs to the cor-
poration with which he is affilliated, he must allege
in his complaint and demonstrate to the satisfaction
of the court that he has exhausted all available
means within the corporation itself to redress his
grievances. Hawes v. Oakland, 104 U.S. 450
(1882); Evans v. Diamond Alkali Co., 315 Pa. 335,
172 A. 678 (1934); Burdon v. Erskine, 264 Pa. Su-
per. 584, 401 A.2d 369 (1978). See generally, Note,
Demand on Directors as a Prerequisite to a Deriva-
tive Action, 73 Harv. L. Rev. 746 (1960). This salu-
tary requirement, premised, in part, on a recogni-
tion of the authority peculiarly vested in the board of

directors to conduct and coordinate corporate affairs, including the prerogative to choose, in the existence of sound business judgment, whether or not to enforce a right on its own behalf, is embodied in Pa. R.C.P. 1506 which provides in relevant part:

"In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth

. . .

(2) the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts"[5]

This requirement reflects judicial cognizance of the prerogatives and expertise of the board of directors as stewards of the corporate assets and welfare. Weiss v. Temporary Investment Fund, Inc., 692 F.2d 928, 940 (3d Cir. 1982). See also Lewis v. Graves, 701 F.2d 245, 247 (2d Cir. 1983); Lewis v. Curtis, 671 F.2d 779, 784 (3d Cir. 1982); Cramer v. General Television & Electronics Corp., 582 F.2d 259, 275 (3d Cir. 1978), cert. denied, 439 U.S. 1129 (1979). The underlying purpose of the demand requirement was summarized by one commentator as follows:

"Forcing shareholders to exhaust intracorporate remedies by first making demand on directors al-

---

5. Rule 1506 is patterned after its counterpart in federal practice, F.R. Civ. P. 23.1, which provides that in a derivative action "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors . . . and the reasons for his failure to obtain the action or for not making the effort." Thus, our analysis of Rule 1506 as it applies to the instant matter will be guided, in part, by reference to federal case law which we find instructive.

lows the directors a chance to occupy their usual status as managers of the corporation's affairs, giving the corporation an opportunity to take control of a suit that will be brought on its behalf. The demand requirement thus furthers a principle basic to corporate organization, that the management of the corporation be entrusted to its board of directors." Note, The Demand and Standing Requirements in Stockholder Derivative Actions, 44 U. Chi. L. Rev. 168, 171 (1976).

Pursuant to Rule 1506, if the individual shareholder-plaintiff has attempted without success to secure enforcement by the corporation, through its officers and directors, he must set forth in his complaint specific facts outlining the efforts which he made. Similarly, if no efforts were made to seek corporate action, the reasons for not doing so must be adequately stated. To reiterate, these requirements are not just antiquated remnants of notice pleading. Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc., 73 F.R.D. 420, 428 (E.D., Pa. 1977), aff'd mem., 586 F.2d 834 (3d Cir. 1978); Royston v. Eastern Empire Corporation, 393 F. Supp. 1010, 1014 (E.D., Pa. 1975). Rather, they reflect a justified reluctance on the part of the judiciary to interpose itself or otherwise interfere with internal corporate affairs, the administration of and control over which generally lies within the exclusive domain and expertise of corporate officers and directors.

Here, plaintiff did not make a demand for action on Franklin Town's board of directors. In attempting to explain why no demand was made, plaintiff alleges that any such efforts would have been futile. Specifically, paragraph 22 of the amended complaint states:

"22. Korman has not attempted to have Franklin Town enforce its claims herein against SmithKline, Adwin and Butcher because such efforts would have been futile. The directors of Franklin Town devised and adopted the scheme complained of in paragraph 11 herein. Four of the five directors of Franklin Town are employees and representatives of SmithKline, Adwin, Butcher or an affiliated company of Adwin. The fifth director is president of Franklin Town whose employment depends upon the good will of the majority shareholders. Moreover, the majority shareholders control Franklin Town and on March 15, 1983 voted, over Korman's objection, to adopt the scheme referred to in paragraph 11 herein."

Defendants contend that plaintiff's allegation of futility is insufficient to relieve it of the demand requirement and, accordingly, we were requested to dismiss Count III of the complaint on this basis. Under the factual circumstances presented here, which we must accept as true for purposes of resolving the instant preliminary objections, we conclude that plaintiff's allegations are sufficient to meet the requirements of Rule 1506 (a).

Pennsylvania has long recognized an exception to the demand requirement where, under the facts presented, such a request would be "vain and useless." Wilson v. Brown, 269 Pa. 225, 227, 112 A.1,2 (1920). See also Evans v. Diamond Alkali Co., 315 Pa. 335, 337, 172 A.678, 679 (1934); Boyd v. Cooper, 269 Pa. Super. 594, 410 A.2d 860, 863 n.4 (1979) (Price, J., concurring); Hess v. M. Aaron Company, 4 D.&C. 3d 153, 160 (1977). Although more conclusory allegations in the complaint will not suffice to excuse demand, see Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1209-10 (9th Cir. 1980), where the allegations "permit the inference

by the court that the directors upon whom demand would be made lack the requisite disinterestedness to determine fairly whether the corporate claim should be pursued," a demand on the board is not required. Lewis v. Curtis, 671 F.2d 779, 785 (3d Cir. 1982). In determining whether sufficient facts have been set forth here to excuse the demand requirement, we are guided by the observations of the court in Cohen v. Industrial Finance Corporation, 44 F. Supp. 491 (S.D.N.Y. 1942), wherein it was stated:

"A realistic view should be taken of the facts pleaded as excusing a demand on directors that they bring suit. The court should not cajole itself into believing that the members of a board of directors elected by the dominant and accused majority stockholder, after accusations of wrongdoing have been made, were selected for membership on the board to protect the interests of the minority stockholders and to assure a vigorous prosecution of effective litigation against the offending majority. Where we know that puppet directors would at best only go through the motions, are we barred from considering who would be manipulating the wires?" Id. at 494. See also Heilbrunn v. Hanover Equities Corporation, 259 F. Supp. 936, 939 (S.D.N.Y. 1966).

Here, plaintiff alleges that four of the five directors of Franklin Town are employees and representatives of defendant majority shareholders and that the defendants, by virtue of their ownership of a preponderant majority of the shares, dominate and control the directors, thus rendering the board incapable of independent judgment. Taking a realistic view of the facts pleaded, and drawing all reasonable inferences in favor of plaintiff as we are required to do, the obvious conclusion is that a de-

mand upon the directors of Franklin Town to bring action would have been futile.[6] Under these circumstances, we conclude that plaintiff has satisfied the requirements of Pa. R.C.P. 1506, sufficient facts having been pleaded to justify plaintiff's failure to demand corporate action. None of the authorities cited by defendants compel a contrary conclusion.

## (B) CONFLICT OF INTEREST

Defendants next contend that an acute and fatal conflict of interest exists which precludes plaintiff from fairly and adequately representing the interests of the other shareholders similarly situated in that plaintiff is seeking to recover individually (Count II) from the very corporation on whose behalf it purports to sue derivatively. Accordingly, defendants argue that Count III of the amended complaint should be dismissed. Again, we disagree.

Although our rules of procedure do not explicitly establish a prerequisite of fair and adequate representation for maintenance of a shareholder derivative action,[7] such a requirement is implicit in Pennsylvania jurisprudence. The reasons underlying such a rule are apparent. As the United States Supreme Court stated in Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949):

"[A] stockholder who brings suit on a cause of action derived from the corporation assumes a posi-

---

6. At the meeting of March 15, 1983, the proposed stock issuance which is the subject of the instant attack was adopted by a majority over the objection of plaintiff. Complaint para. 22. Accepting the accuracy of this averment, we are compelled to conclude that the factual issue of futility of demand has here been met.

7. F. R. Civ. P. 23.1 on the other hand does contain such a specific proviso.

tion, not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent. Id. at 549-50. Consequently, where it is demonstrated that the plaintiff's interests are truly antagonistic to those he is seeking to represent, the representation is deemed inadequate and the derivative suit must be dismissed.

In order to necessitate dismissal, the alleged conflict must be real or serious. A purely theoretical dispute will not suffice. G. A. Enterprises, Inc. v. Leisure Living Communities, Inc., 517 F.2d 24 (1st Cir. 1975). Obviously, in situations where, as here, a plaintiff seeks in a single action redress not only on behalf of the corporation but also from the corporation, a hypothetical or surface antagonism exists. However, "the great weight of authority rejects a per se rule prohibiting such representation, and simultaneous prosecutions have been permitted where the asserted 'antagonism' between the primary and derivative actions is merely a 'surface duality.' " In re Transocean Tender Offer Securities Litigation, 455 F.Supp. 999, 1014 (N.D. Ill. 1978). See also Miller v. Fisco, Inc., 63 F. R.D. 132, 134 (E.D., Pa. 1974).

An examination of the instant complaint reveals that no serious conflict exists which would disable plaintiff from pursuing this derivative action. Rather, in the last analysis, this lawsuit has a basic goal which entails no real inconsistencies — to air the nature and allegedly wrongful aspects of the proposed stock issuance which plaintiff assails. Any contention to the contrary is disingenuous.

## (C.) BUSINESS JUDGMENT RULE

Defendant's reliance on the business judgment rule as codified in section 603 of the Business Corporation Law is equally unavailing at this stage of the litigation. Section 603 provides in relevant part:

"Shares of a business corporation shall not be issued except for money, labor done, or money or property actually received . . . . For the purpose of determining whether shares have been fully paid for, in order to fix the extent of the outstanding obligation of a shareholder to the corporation with respect to such shares, the value placed by the incorporators or the board of directors, as the case may be, upon the consideration, other than cash, with which the subscriptions for shares are made payable, shall be conclusive." Pa. Stat. Ann. Tit. 15, § 1603A (Purdon's 1967). Relying on matters dehors this record, defendants assert that consideration was in fact received by the corporation for the proposed issuance of stock and, therefore, the director's valuation is conclusive and may not now be challenged by plaintiff. We are constrained, however, to examine, and accept as true, only the well pleaded averments in the complaint, not collateral factual matters raised by defendants in their preliminary objections. While these collateral matters may at a later time prove determinative, they are not properly

before the court at this preliminary stage of these proceedings and accordingly will be ignored.

Plaintiff alleges here that no consideration was received by the corporation for the proposed issuance of approximately 400,000 shares of stock to the defendant majority shareholders. Again, this we must accept as true. Under these circumstances, neither section 603 of the Business Corporation Law which, by its very terms, deals with consideration "actually received," nor the common law business judgment rule will insulate from judicial scrutiny this proposed corporation action.

## RECOVERY OF PUNITIVE DAMAGES IN EQUITY

In Counts I and III of the amended complaint, plaintiff seeks, inter alia, an award of punitive damages against the majority shareholders for breach of fiduciary duty and self-dealing. Defendants contend that punitive damages may not be recovered in an action in equity in Pennsylvania and accordingly have demurred to these counts on this basis. For the reasons set forth below, we conclude that punitive damages, where warranted, may be awarded in an equitable action in Pennsylvania and, therefore, the instant preliminary objection must be dismissed.[8]

---

8. Parenthetically, we note that preliminary objections in the nature of a demurrer are an inappropriate means by which to challenge the legality of the damages sought in a complaint. Suraci v. Ball, 160 Pa. Super. 349, 354, 51 A.2d 404, (1947). Where a defendant wishes to challenge an erroneous prayer for damages, a preliminary objection in the nature of a motion to strike off impertinent matter is the proper course to follow, Hudock v. Donegal Mutual Ins. Co., 438 Pa. 272, 264 A.2d 668 (1970). Defendants' demurrer, therefore, is technically improper. However, in the interest of justice and judicial economy, we will ignore this non-prejudicial, procedural irregularity and address the merits of defendants' argument.

Initially, we note that the availability of punitive damages as an alternative or additional remedy in actions in which equitable relief is sought has received a considerable amount of comment by the courts throughout this county. See Annot.: Punitive Damages-Award by Equity, 48 A.L.R. 2d 947 (1956). Rooted in the historical procedural separation between law and equity, the majority of the early cases which addressed this issue concluded that the equity court, as a court of conscience, did not have jurisdiction to enforce penalties or forfeitures and, therefore, could not award punitive damages. Although severely criticized in recent years, see, e.g., Annot.: Allowance of Punitive Damages in Stockholder's Derivative Action, 67 A.L.R. 3d 350 (1975), several jurisdictions nonetheless adhere to this view and prohibit the recovery of punitive damages in an equitable action. See, e.g., Beals v. Washington International, Inc., 386 A.2d 1156 (Del. Ch. 1980); Hoppe v. Hoppe, 370 So. 2d 374 (Fla. App. Div. 1978); Subscribers Casualty Reciprocal Exchange v. Totaro, 370 So. 2d 1342 (Miss. 1979). The modern trend, however, renounces this archaic rule, recognizing that it is founded on an outmoded and obsolete procedural division between law and equity which is no longer sustainable under modern practice. For example, the New York Court in I.H.P. Corp. v. 210 Central Park South Corp., 12 N.Y. 2d 329, 189 N.E. 2d 812, 228 N.Y.S. 2d 883 (1962), reassessed and rejected the prior rule, concluding that an award of punitive damages is a proper exercise of equitable power. The court reasoned:

"It should be noted, at the outset, that the weight of authority in this state and elsewhere has, in the past, forbidden punitive damage awards in actions in which equitable relief is sought. The reasons are rooted in the historic procedural separation between

law and equity — a separation which, in large measure, is no longer sustainable under a modern code practice. Although the abolition of the ancient forms of action has not eliminated the several legal and equitable principles separately governing judicial remedies, it has removed outmoded procedural barriers against awarding complete relief in a single action.

. . .

It is thus apparant that the rule which forbids combination of equitable relief with an award of punitive damages is founded upon an obsolete procedural division, with no rational basis, apart from history, in modern substantive law or equity. If the facts warrant, it may be entirely appropriate to grant an injunction or another forms (sic) of equitable relief and also exact punitive damages as a deterrent against flagrantly unlawful conduct, whether embraced within an injunction or not. Such freedom to grant whatever judicial relief the facts call for is entirely consonant with substantive legal and equitable principles and with present-day concepts of procedural efficiency." 228 N.Y.S. 2d at 885-888. See also Berry v. McLeod, 124 Ariz. 346, 604 P. 2d 610 (1979); Charles v. Epperson & Co., 258 Iowa 409, 137 N.W. 2d 605 (1965); Tahoe Village Realty v. De Smet, 590 P. 2d 1158 (Nev. 1979); Black v. Gardner, 320 N.W. 2d 153 (S.D. 1982); National Bank of Commerce v. May, 583 S.W. 2d 685 (Tex. Civ. App. 1979).

The appellate courts of this Commonwealth have not recently examined the propriety of awarding punitive damages in equitable actions. In Jones v. Aronson, 45 Pa. Super. 148 (1911), however, the Pennsylvania Superior Court, without explanation, ruled that punitive damages could not be recovered in an equitable action seeking specific performance.

Although this early decision has never explicitly been overruled, more recent pronouncements from our appellate courts considerably undercut its continued viability. Accordingly, we do not find it controlling here.

It is now well settled that once equity has assumed jurisdiction, it may retain jurisdiction to do complete justice between the parties and thereby ensure a just result even if that result is merely an award of monetary damages. Stryjewski v. Local Union No. 830, Brewery and Beer Distributor Drivers, Helpers and Platform Men, 451 Pa. 550, 304 A.2d 463 (1973); Ackerman v. N. Huntingdon Township, 437 Pa. 49, 261 A.2d 570 (1970); Wortex Mills v. Textile Workers U. of A., 380 Pa. 3, 109 A.2d 815 (1954). Thus, once equity jurisdiction attaches, the equity court is permitted to administer both equitable and legal relief. Solomon v. Cedar Acres East, Inc., 455 Pa. 496, 317 A.2d 283 (1974). This expansive view of equitable powers is in sharp contrast to the more restricted and narrowly defined jurisdiction of equity courts at the time Jones v. Aronson was decided. In view of this recognized expansion of equitable powers, it follows that a rule prohibiting the recovery of punitive damages in equity no longer has a rational basis in Pennsylvania jurisprudence and, therefore, a court of equity should not be precluded from awarding punitive damages where the facts warrant such recovery. See I.H.P. Corp. v. 210 Central Park South Corp., supra. See also Commonwealth v. Beatty, 500 Pa. 283, 455 A.2d 1194, 1198 (1983) (where rule of law no longer serves purpose for which it was designed, it should not be applied). As the court in Natcher v. C.I.T. Financial Services Consumer Discount Company, 26 Lawrence L.J. 337 (1979) observed: "[b]ecause punitive damages are merely incidental to a

cause of action for compensatory damages and are not to be considered a separate cause of action, [citations omitted], a court of equity should be able to award them, given the court's ability to award monetary damages in addition to the more traditional forms of equitable relief." Id. at 339-40 (award of punitive damages is a proper exercise of equitable power). But see Smith v. Benjamin Coal Company, Inc., No. 306-1976 (C.C.P. Jeff., filed November 3, 1978) (punitive damages are not recoverable in equity.[9] Because the historical underpinnings no longer exist to justify a rule against awarding punitive damages in equity, we conclude that defendants' preliminary objection must be overruled.[10]

## MORE SPECIFIC PLEADING

In paragraph 12 of the amended complaint, plaintiff alleges:

"In addition to the scheme set forth in paragraph 11 herein, the majority shareholders further have demonstrated their indifference to the interests of minority shareholders and indifference to their legal obligations to Franklin Town and minority shareholders, including Korman, by *inter alia*:

(a) causing Franklin Town to engage in transactions with other entities in which the majority shareholders have an interest to the detriment of

---

9. On appeal, the Superior Court reversed and remanded. Smith v. Benjamin Coal Company, Inc., 279 Pa. Super. 82, 420 A.2d 754 (1980). Aside from the mere recitation of the lower court's conclusion, however, the court did not in any way address or examine the substance of the issue before us today.

10. Whether plaintiff can establish, with appropriate proof, the requisite factual predicate to justify any award of punitive damages is a matter which should properly be addressed at a later stage of this litigation.

the interests of minority shareholders and of Franklin Town;

(b) failing to disclose to Korman information material to its ownership interest, and failing to provide Korman with information which was necessary to a full understanding of proposed corporate action including, *inter alia*, the action proposed in the Notice of Annual Stockholders Meeting. . . ."
Defendants contend that this allegation is totally inadequate in that it does not contain the requisite clarity and specificity to enable them to prepare a defense. We agree.

At a minimum, a plaintiff must concisely set forth in his complaint the facts upon which his cause of action is based. Pa. R.C.P. 1019. Obviously, where the complaint lacks facts which are crucial to recovery, it would be unjust to require the defendant to undergo the expense of trial. Vitro Manufacturing Co. v. Standard Chemical Co., 291 Pa. 85, 139 A.2d 615 (1927). Under Pennsylvania pleading rules, a party has considerable latitude in pleading facts of which he has no knowledge, particularly if they are well within the knowledge of his opponent. The outer limits of this liberality have been penetrated, however, whenever the defendant is not apprised of the nature and extent of plaintiff's claims. Line Lex. L. & M. Co., Inc. v. Pa. Pub. Corp., 451 Pa. 154, 301 A.2d 684 (1974); Laursen v. General Hospital of Monroe County, 259 Pa. Super. 150, 393 A.2d 761 (1978). Here, plaintiff has supplied no specificity underlying its claims set forth in paragraph 12. Accordingly, we will sustain this preliminary objection and order plaintiff to file an amended pleading.

## LACHES

Finally, defendants contend that plaintiff's claims are barred by the equitable doctrine of laches. For

the reasons that follow, we overrule this preliminary objection.

Unlike statutes of limitations, laches requires not only a passage of time, but also a resultant prejudice to the party asserting the doctrine. Beaver v. Penn Tech Paper Co., 452 Pa. 542, 307 A.2d 281 (1973); Young v. Hall, 421 Pa. 214, 218 A.2d 781 (1966). The application of the doctrine depends upon whether, under the circumstances presented, "the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." Wilson v. King of Prussia Enterprises, Inc., 422 Pa. 128, 133, 221 A.2d 123, 126 (1966).

Unquestionably, laches may be interposed as a defense by way of preliminary objection. Hansel v. Hansel, 487 Pa. 196, 409 A.2d 32 (1980); Silver v. Korr, 392 Pa. 26, 139 A.2d 552 (1958). However, this is appropriate only when the defense is apparent on the face of the complaint and only when the issue is free and clear from doubt. Beaver v. Penntech Paper Co., supra.; Rush v. Butler Fair & Agr. Assn. 391 Pa. 181, 137 A.2d 245 (1958). Otherwise, it must be asserted as an affirmative defense under the heading "new matter" in defendant's answer. 5 Goodrich-Amram 2d §1509(b) 1 at 116. Here, the amended complaint does not reveal on its face that plaintiff failed to exercise due diligence in prosecuting the instant claim or that defendants will be prejudiced as a result of whatever delay might be involved. The issue is not, as required, free and clear from doubt. Under these circumstances, the law is quite clear that a preliminary objection is inappropriate. Defendants, of course, may raise the defense of laches in their answer to plaintiff's complaint and, after an appropriate factual record is developed, the issue will be ripe for adjudication and might, in fact, prove meritorious. However, we are

unable to make this controlling determination at this preliminary stage of these proceedings.

For all the foregoing reasons, we enter the following

## ORDER

And now, this June 20, 1984, upon consideration of defendants' preliminary objections to plaintiff's amended complaint in equity, plaintiff's response thereto, plaintiff's preliminary objections to defendants' preliminary objections, and after argument held, it is hereby ordered and decreed as follows:

(1) Plaintiff's preliminary objections are sustained and paragraphs 19-21 of defendants' preliminary objections are stricken;

(2) Defendants' preliminary objection in the nature of a motion for more specific pleading is sustained and plaintiff shall, within 30 days from the date of this order, file an amended complaint specifically setting forth the facts underlying the claims set forth in paragraph 12 of the complaint; and

(3) In all other respects, defendants' preliminary objections are overruled.